*In re* MARRIAGE OF MARIA V. MAYZNER, Petitioner-Appellee, and MARK S. MAYZNER, Respondent-Appellant.

First District (5th Division)   No. 84—2404

Opinion filed May 23, 1986.

Thomas A. Else, Jr., of Neumark & Bonner, of Chicago, for appellant.

John P. Rinella, of Rinella & Rinella, Ltd., and Paul J. Bargiel, both of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Respondent, Mark S. Mayzner, appeals from the property division and maintenance portions of a judgment of the circuit court of Cook County dissolving his marriage to petitioner Maria V. Mayzner. Respondent contends: (1) the trial court, as a matter of law, was required to reimburse him for his nonmarital contributions toward the purchase and furnishing of the marital home; (2) the trial court's allocation of the marital property constituted an abuse of discretion; (3) the court erred in awarding Maria possession of the marital home for

six years; (4) the amount and duration of the maintenance awarded to Maria constituted an abuse of discretion.

We affirm.

Both parties were 57 years old at the time of trial in 1984. Mark, with a doctorate in psychology, taught psychology at Loyola University, earning $49,300 (net $29,652) for nine months' work. (In past years he had also occasionally taught for a month in the summer including 1982 when he was paid $5,477 (net $3,925) for that month.) He also received $1,800 in stock dividends, for a total gross income of $51,100 in 1983.

Mark's nonmarital property included stock valued at $25,000, checking accounts totaling $5,000, a car valued at $2,000, and a pension with a nonmarital portion valued at $14,831. Thus, his total nonmarital assets were valued at $46,831.

Maria had not worked during the parties' 13-year marriage and prior to that had not worked for 15 to 20 years. Her formal education ended after three years of high school. She had no trade school training and could neither type nor take dictation. Two strokes eight years earlier had left her with periodic instances of numbness to her face, right hand, knee and foot.

Maria's nonmarital property included an anticipated $83,227 (before tax) inheritance from her father, an engagement ring from Mark with a replacement value of $30,000, and $2,300 in a checking account. Since she and her husband separated in May 1982 she had borrowed $12,000 from a brother for living expenses. Thus, her net property value was $103,577. Her estimated living expenses were approximately $2,000 a month.

At trial Mark contended that Maria should also be credited with certificates of deposit totaling about $78,000 which had been in joint tenancy with her father. However Maria testified that she was unaware of these certificates until after her father's death. Because she believed that he intended that all such funds should be part of his estate she had authorized the transfer of this money to that estate.

The parties' marital property included a condominium (the marital home), with $75,000 in equity, a $20,000 certificate of deposit, and the marital portion of Mark's pension, worth $20,000.

Mark testified that he had paid the $20,000 for their condominium from his own nonmarital funds. He had also used $10,000 of his funds to purchase furniture. Maria testified that a housekeeper would come once every two weeks to "help." When cross-examined about whether she contributed any money to their certificate of deposit she testified, "My husband always worked and I took care of the other ***."

Mark's counsel cut off this answer at this point, instructing her to answer yes or no.

The judgment for dissolution, entered September 10, 1984, provided that the marital property would be divided as follows. Maria received the $20,000 certificate of deposit, Mark was awarded the entirety of his pension (including the $20,000 marital portion) and the parties were to divide the proceeds of the sale of their condominium in six years. Maria was awarded possession and occupancy of the condominium for six years with the stipulation that she pay all taxes, insurance premiums, assessments, and mortgage payments for that period. Maria was also awarded maintenance of $700 per month for six years or until her remarriage or the death of one of the parties, whichever event occurred first.

■ We first consider Mark's contention that he was entitled as a matter of law to reimbursement for the $30,000 in nonmarital contributions that he made toward their condominium and its furnishings. Mark relies on section 503(c) of the Illinois Marriage and Dissolution of Marriage Act, which provides in pertinent part:

"(c) Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

(1) When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution, subject to the provisions of paragraph (2) of this subsection; provided that if marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property, shall be deemed transmuted to marital property, subject to the provisions of paragraph (2) of this subsection.

(2) When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of

the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." (Ill. Rev. Stat. 1985, ch. 40, par. 503(c).)

This section was adopted in order to remedy the harsh effect of the application of the transmutation doctrine utilized by the supreme court of Illinois in the case of *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239. (Ill. Ann. Stat., ch. 40, par. 503(c), Supplement to Historical & Practice Notes, at 59-60 (Smith-Hurd, Supp. 1985); see *In re Marriage of Thornton* (1985), 138 Ill. App. 3d 906, 918, 486 N.E.2d 1288, 1296.) In *Smith* a $45,000 nonmarital building was presumed to have been transmuted into marital property because $3,800 in marital funds were used to improve it. But the amendment of section 503(c) by Public Act 83—129, effective August 19, 1983 (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)), as set out above, changed the law. Now when property from one estate (marital or nonmarital) is contributed to property from another estate and loses its identity the contributed property is transmuted into the character of the recipient estate, but with a right to reimbursement in the contributing estate. However, no reimbursement is permitted when the contribution was a gift. (Ill. Rev. Stat. 1983, ch. 40, par. 503(c); Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336, 338 (1984).) Of most importance to our analysis is the fact that under the amendment there is a rebuttable presumption that a contribution of nonmarital funds to a marital home held in joint tenancy constitutes a nonreimbursable gift. (*In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498, 478 N.E.2d 1192; Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336, 340 (1984).) In this cause respondent's $30,000 contribution to the parties' condominium, which was held in joint tenancy, was therefore presumed to be a gift. Respondent concedes that he presented no evidence to rebut this presumption, therefore he was not entitled to any reimbursement.

■ We next consider Mark's contention that the trial court abused its discretion in allocating the marital property. A court is to divide such property in just proportions, considering all relevant factors including, *inter alia*: the value of the nonmarital and marital property; the contribution of each party in acquiring the property, in-

cluding any homemaker contribution; the age, health, occupation, sources of income, and employability of each party; and whether maintenance is also being awarded. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) However, no specific finding as to the basis for the property division are required. (*In re Marriage of Caldwell* (1984), 124 Ill. App. 3d 898, 465 N.E.2d 523.) In our view the overriding factor in this cause was that of the health, occupation, sources of income, and employability of the parties. Maria was 57 years old, with a history of strokes, no high school diploma, no demonstrated job skills, and no job history in over 28 years. Although the same age, Mark, with a doctorate in psychology, was enjoying an income of approximately $51,000 a year as a college professor and had demonstrated the ability to earn over $5,000 more by working one of the three free months available to him in the summer.

Mark notes that the bulk of the parties' property was acquired from his income. However there was some evidence from which the court could have concluded that Maria had provided a homemaker's contribution. She was not employed during their marriage and testified that a housekeeper only came in twice a month to help. Her truncated testimony about her taking care of the "other ***" while her husband worked also provides some evidence of her contribution. Mark's nonmarital property was valued at less than half of Maria's but his relative earnings and earning potential clearly offset this factor. The fact that Maria also received alimony may explain why Mark, despite his vastly superior employment situation, still received exactly half of the marital property. A reviewing court will find an abuse of discretion in the division of marital property only where no reasonable person would have so allocated the property. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) We find no such abuse of discretion in this cause.

■◢ ■ Finally Mark contends that the award of maintenance was improper. Under the statute maintenance may be awarded where the spouse seeking it lacks sufficient property to provide for her needs and cannot support herself through appropriate employment. (Ill. Rev. Stat. 1985, ch. 40, par. 504.) Factors to be considered in determining the amount and duration of such an award include: the ability of the party seeking maintenance to meet her financial needs; the time necessary for that party to obtain sufficient training to find appropriate employment; the age and physical and emotional condition of the parties; and the ability of the spouse from whom maintenance is sought to meet his needs while also paying maintenance. (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) Mark has not contested Maria's testimony that

she required approximately $2,000 a month to live on. Yet even assuming that the full value of her marital and nonmarital estates (approximately $160,000) could be invested at the nonunlikely rate of 10% suggested by Mark, the resulting $16,000 income would be about $8,000 less than her yearly requirements. The maintenance awarded, $8,400 per year for at most six years, cannot be said to have been unreasonable given her evident unemployability. For the first time in his reply brief Mark has contended that he could not meet his own needs and pay this amount. We find this issue to have been waived by his failure to raise it in his initial brief on appeal. (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911.) Furthermore, we note that the trial court was not required to accept Mark's claimed living expenses which included food expenses of $600 per month and charge accounts of $600 per month, the latter including the cost of frequent flights to visit his mother in New Jersey. Considering all the factors we have noted we find no abuse of discretion in the amount and duration of the maintenance awarded.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.