*In re* MARRIAGE OF BARBARA ANN HART, Petitioner-Appellant, and ROBERT HART, Respondent-Appellee.

Fourth District No. 4—89—0238

Opinion filed February 22, 1990.

Ronald Tulin, of Ronald Tulin, Ltd., of Charleston, for appellant.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On November 12, 1986, Barbara Hart, age 42, filed a petition for dissolution of her marriage to Robert Hart, age 52. On September 11, 1988, the trial court entered an order dissolving the marriage, dividing marital property, setting child support, and denying maintenance. Petitioner appeals, arguing the trial court abused its discretion in not awarding her one-half of respondent's pension, the trial court erred in calculating respondent's net income for purposes of child support, and the trial court abused its discretion in denying her rehabilitative maintenance.

We reverse and remand.

### BACKGROUND

The parties were married on February 11, 1968, and have three children, Eric, Michael, and Shannon. The children are 16, 14, and 12 years of age, respectively.

### INCOME

Petitioner is a registered nurse. After her marriage, she worked part time until her first child was born. Subsequent to the birth of her children, she worked part time training horses and riders. In November 1987, she began work as a staff nurse at a nursing home. She earns $10 per hour and nets $860 per month. She works 56 hours every two weeks during the daytime. Petitioner testified she wanted to improve her skills and return to school. She wanted to earn a bachelor's degree in nursing so she would be able to apply for a supervisory position or better paying position. She investigated returning to school but had not made any plans. She did not plan to return to school or increase her work hours at the present time because the children needed supervision. Petitioner stated her return to school was dependent upon the children's adjustment to the dissolution. She needed temporary maintenance in order to return to school full time.

Petitioner requested she be awarded the marital home. She stated she could not afford the $1,217 monthly mortgage, tax, and insurance payment. She contributed $500 per month to the home and it would cost her a similar amount to rent a home.

Respondent is a surgeon and was a partner in Link Clinic. He had been associated with Link Clinic since 1978. Respondent and pe-

titioner's joint Federal income tax return shows that he had a partnership income of $142,000 in 1987. Donald Doehring, a certified public accountant, who prepared the parties' tax returns, stated respondent's gross income from all sources was $149,506 in 1987. He had prepared an exhibit to show respondent's income for purposes of the instant cause. Doehring stated $23,370 of the 1987 income was nonrecurring income from the sale of a 2% interest in the partnership. Doehring subtracted this amount and professional expenses from respondent's income. He then added income received from consulting fees. The net professional income was $119,948. From this Doehring deducted taxes, leaving $93,610. Doehring then deducted $15,742, which represented repayment of part of the debts the parties had incurred pursuant to a bankruptcy reorganization plan. Doehring then deducted medical insurance premiums totalling $2,546. Finally, Doehring subtracted $17,050, which represented money respondent had borrowed to pay his 1987 taxes and interest on that amount.

Doehring stated respondent's net income for purposes of this case was $58,272. Doehring admitted that he had subtracted $16,000 of the income tax liability twice and that this was not sound accounting practice. Doehring testified respondent's gross income in 1988 would be $6,000 to $8,000 less than his gross income in 1987.

Link Clinic merged with Carle Clinic in 1988. All of the agreements had not been signed as of the day of the hearing. However, respondent was guaranteed a minimum gross salary of $140,000. As part of the merger, respondent was responsible for malpractice insurance premiums totalling $100,000. His partnership share in Link Clinic, valued at $38,962, was used to offset part of the liability. The balance would be deducted from his salary from Carle Clinic in installments of $23,000 the first year and $25,000 the second year. Respondent testified that it was possible he could generate income above the minimum salary. Carle Clinic had a pension and profit-sharing program. However, respondent was uncertain about the specifics of this program. The merger with Carle Clinic was a business decision, which would eliminate future competition and protect his income.

### ASSETS AND LIABILITIES

The parties submitted statements of marital assets and liabilities. The value of several items of personal property varied in the documentation submitted to the trial court. The following table roughly summarizes the information. All of the marital debt is not summarized.

## ASSETS AND LIABILITIES

| | Value | Indebtedness |
|---|---|---|
| Marital home | $ 92,500 | $ 87,342 (first mortgage) |
| Adjoining 10-acre tract and barn | 24,000 | 27,604 (first mortgage acreage; second mortgage marital home, hereinafter second mortgage) |
| 1978 Porsche | disputed | 4,500 |
| 1981 Dodge | disputed | |
| 1978 Truck | disputed | |
| 1972 Ford | disputed | |
| three horses | unvalued | |
| IRA's | 3,677 | |
| Household furnishings | Disputed | |
| Equipment | 800 | |
| Interest in partnership | 38,962 | |
| Pension profit share | 96,393 | +1988 contribution of $12,000 to 15,000 |
| Unsecured creditors | | 310 per month (Until August 1989) |

Respondent testified that the loan repayment amount subtracted from his income by Doehring was for the repayment of business debts. He and petitioner borrowed money from several sources to finance the purchase of airplanes for investment purposes. Part of the loan was also to purchase the 10-acre tract and barn. The primary loan was secured by a second mortgage on the marital home and a first mortgage on the 10-acre tract (hereinafter referred to as second mortgage). Respondent stated this was a business loan. He borrowed an additional amount of money for the 10 acres. The debt to the Mattoon National Bank was for a second plane. The third debt was for use tax on a twin-engine plane. The monies borrowed from the insurance companies against policy benefits were for living expenses. As an adverse witness, respondent admitted he did not have the various amounts of money and loans segregated in his mind.

Petitioner admitted the ranch operation and the plane were shown as business investments for tax purposes. Petitioner stated she reluctantly agreed to purchase the twin-engine plane and signed the notes. However, she felt respondent bought the plane because he loved flying. Respondent was not qualified to pilot the twin-engine plane.

In 1986, the parties filed a reorganization plan, which involved both business and personal debts. The first mortgage on the marital home was not affected by the reorganization. Pursuant to the plan, the second mortgage, valued at $50,000, was to be paid off in 48 monthly installments of $1,104.17. After payment, the creditor was to release the second mortgage on the marital home and the mortgage on the 10-acre tract. Additionally, the parties were required to pay unsecured creditors $310 per month beginning August 22, 1986, for 36 months. The parties' joint debts at the time of the bankruptcy were approximately $318,000. Their joint assets were approximately $138,000. The reorganization plan stated the property in the bankruptcy estate would become the debtors' property after payment of the amount shown in the plan.

The trial court in a letter to the parties stated the primary problem was whether the home with the acreage should be sold to pay debts or retained by the petitioner. The court noted the children should, if possible, live in the family home. Respondent was the primary source of the parties' income as well as the primary source of the debts. The court then stated that if it were best for the children to live in the family home, it was best that respondent have exclusive rights to his pension. The letter offered respondent several options.

On September 11, 1988, the trial court entered an order dissolving the marriage and awarding custody of the children to petitioner. The court found respondent was the primary source of income for the family, the main cause of some of the debts, and would be the main source of college funds for the children. The court stated that since respondent must pay the bulk of the debts, he was given a choice of various property division options.

Petitioner was awarded possession of the home and acreage until Shannon was 18 years old and out of high school. Petitioner received the furnishings and equipment, except the cut glass vase and the furniture respondent brought into the marriage. She received the vehicles except the Porsche.

Respondent was ordered to pay the mortgage, taxes, insurance, and repairs on the marital home. The marital home was to be sold after Shannon reached 18 years of age and was out of high school. The equity was to be divided equally between the parties. Respondent received the mortgage interest deduction, pension through the clinic, and Porsche, subject to its debt. The court noted respondent was to receive any interest from his partnership share in Link Clinic. In discussing child support, the court found the partnership interest was a wasted asset since it would be used to pay respondent's insurance

costs. The court ordered respondent to pay all unpaid marital debts.

The court set child support at $1,760 per month until September 1989, $1,825 per month until September 1990, and then at $2,180 per month. The court based the $1,760 figure on a projected net income of approximately $65,872 as suggested by respondent. The court ordered respondent to maintain his existing insurance policies, with existing beneficiaries, and to maintain adequate medical insurance for the children. The court further ordered respondent to pay $3,415.70 to petitioner's attorney and $1,428.70 to petitioner's certified public accountant. Finally, the court denied maintenance, other than property in lieu of maintenance. The court noted petitioner was capable of working full time but chose not to do so. Subsequently, the court denied petitioner's motion for reconsideration.

Opinion

Initially, petitioner argues the trial court's division of marital property was inequitable, and the trial court improperly applied the factors stated in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)). Petitioner contends the pension and profit-sharing plan was the only real asset in the parties' possession, since the marital residence and adjoining acreage were encumbered. Therefore, respondent received both his interest in Link Clinic and the pension and profit-sharing plan. Petitioner did not determine the value of her use of the marital residence.

Respondent argues the benefit of living in the marital home has worth which must be calculated. Respondent secondly argues the interest in Link Clinic is not property which the respondent received because he received no value for it. Respondent contends the division was not an abuse of discretion.

In her reply brief, petitioner contends the court must calculate the present cash value of living in the marital home and the detriment to respondent, as well as the probable increase in the pension. Petitioner then contends the tax consequences and present cash value of alternative dispositions must be calculated.

Section 503(d) of the Act allows the court discretion to divide marital property in what it considers just proportions, considering listed factors and all other relevant matters. (Ill. Rev. Stat. 1987, ch. 40, par. 503(d); *In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 518 N.E.2d 1316.) The court should consider: the value of the nonmarital and marital property; the contribution of each party in acquiring property, including any homemaker contribution; the age, health,

occupation, source of income, and employability of each party; and whether maintenance is also to be awarded. No specific findings are necessary. *In re Marriage of Mayzner* (1986), 144 Ill. App. 3d 645, 494 N.E.2d 615.

■ The touchstone of a proper apportionment is whether it is equitable in nature. Each case must rest upon its own facts. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) A division of marital property need not be equal to be equitable. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238; *In re Marriage of Click* (1988), 169 Ill. App. 3d 48, 523 N.E.2d 169.) Absent an abuse of discretion whereby no reasonable man could adopt the trial court's position, a reviewing court will not substitute its judgment for the trial court's disposition in marital property matters. *Benz*, 165 Ill. App. 3d at 285, 518 N.E.2d at 1322; see also *In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 521 N.E.2d 621 (discretion abused in maintenance award only when no reasonable person could adopt the view of the trial court).

■ The trial court abused its discretion in the instant case. First, the trial court did not consider the partnership interest in Link Clinic, $38,962, as an asset having real worth. Respondent applied that value to reduce his insurance liability debt, which was incurred as a part of the merger of Link Clinic with Carle Clinic. The merger was not finalized at the time of the dissolution, but its terms were set. Generally, property acquired after marriage, with certain inapplicable exceptions, is presumed to be marital property. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499; Ill. Rev. Stat. 1987, ch. 40, par. 503(a).) The business interest of a spouse acquired subsequent to marriage constitutes marital property subject to equitable distribution upon dissolution. *In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 507 N.E.2d 900.

■ Respondent concedes the value of the partnership interest in Link Clinic was a marital asset. Section 503(d)(1) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(1)) provides the court shall divide marital property in just proportions, considering relevant factors. Among those factors is each party's contribution to or dissipation of the marital property. "Dissipation" is use of marital assets for one spouse's sole benefit or for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 511 N.E.2d 676.) Where a party has dissipated marital assets, the trial court may charge the amount dissipated against the offending party's share of the marital property, so the other party is compensated. *Partyka*, 158

Ill. App. 3d 545, 511 N.E.2d 676.

■ The evidence below clearly established respondent's use of the marital asset for his individual benefit. In essence, petitioner's interest in a marital asset was treated as a nullity because respondent chose to apply the asset to his individual insurance liability, rather than receive a cash payment for it. The partnership interest did not lose its value as a marital asset subject to distribution when it was used to retire a debt. Failure to correctly consider disposition of the partnership interest renders the property division an abuse of discretion. *Partyka,* 158 Ill. App. 3d 545, 511 N.E.2d 676.

■ ■ Petitioner argues the trial court failed to adequately consider the factors stated in section 503(d) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)). Petitioner contends she is entitled to a portion of the pension plan. The trial court in dividing marital property balanced the benefit to petitioner of living in the marital home until Shannon is 18, free of mortgage, taxes, and insurance payments, and her freedom from marital debts, with respondent's obligation to maintain the payments and retire marital debts. The trial court properly considered the joint debt of the parties as a factor offsetting the award of property. (*In re Marriage of Ackerman* (1988), 168 Ill. App. 3d 438, 522 N.E.2d 317.) The trial court also properly considered that respondent's actions in paying the first mortgage for six years would preserve a marital asset and would increase the value of the marital home for both parties. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) Respondent will retire the second mortgage during the six-year period. This will increase the equity in the combined properties. Petitioner urges this court to engage in an assessment of the present cash value of the use of the home, the earning potential of the retirement account, and the detriment to the respondent. Petitioner urges us to then find the trial court abused its discretion based upon our determination of the present cash value of various options which the court could have taken.

The petitioner did not offer such analysis to the trial court. A reviewing court will not reverse and remand for further proceedings where the parties had an opportunity to present evidence to the trial court but failed to do so. (*Benz,* 165 Ill. App. 3d 273, 518 N.E.2d 1316.) We note such calculations are subjects for expert testimony and dispute. However, since the complete division of property must be reevaluated by the court in light of our finding that the partnership interest in Link Clinic was not adequately considered, the petitioner will have an opportunity to present this information to the trial court for its consideration.

We note a complete valuation of all the parties' assets and liabilities will assist the court in reaching its determination of a just property division. The trial court did not set a value for many items of personal property. In this case, valuation of personal property is a necessary predicate to determining the fairness of a property settlement. We note also that where children are involved, the primary objective of the court is to provide adequate support for them. (*Stone,* 155 Ill. App. 3d at 75, 507 N.E.2d at 908.) The trial court on remand will have an opportunity to reassess property division in light of the factors stated in section 504 of the Act and reconsider a division of all the parties' assets and liabilities.

Petitioner next argues the trial court erred in calculating child support by using past rather than future income and by allowing a deduction for certain debts. Respondent argues future income for child support purposes is speculative and the trial court correctly deducted amounts used to generate income.

 ■ Section 505 of the Act provides for the imposition of child support obligations and determines the amount based upon statutory criteria. The minimum amount for the support of three children is 32% of the supporting party's net income. (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(1).) "Net income" is defined as total income from all sources, minus: (a) Federal tax; (b) State income tax; (c) social security; (d) mandatory retirement contributions; (e) union dues; (f) dependent and individual health insurance premiums; (g) prior obligations of support paid pursuant to court order; and (h) expenditures for the repayment of debts that represent reasonable and necessary expenses for the production of income. Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3); *In re Marriage of Adams* (1988), 174 Ill. App. 3d 595, 528 N.E.2d 1075.

 Respondent began employment as an associate of Carle Clinic on the date of the hearing. He testified his guaranteed minimum gross salary was $140,000. Petitioner urges this court to take the $140,000 salary less taxes and social security and use the resultant figure as the base salary for support calculations. Petitioner's argument does not consider deductions for health insurance, deductions for business expenses, and debts. The trial court did not err in using the 1987 income figure as the base for calculating child support amounts.

 Petitioner next argues the court erroneously allowed respondent to deduct his 1987 taxes and an amount borrowed to pay those taxes from his gross income. The record does not support this contention. Although Doehring subtracted the taxes and a $16,000

debt to pay them from respondent's gross income, the amount of support awarded by the trial court shows it added $16,000 to respondent's net income as calculated by Doehring. Petitioner's contention, thus, is not supported by the record.

■■ Petitioner next contends allowing deductions from gross income for debts incurred for the purchase of the twin-engine plane and three other debts was improper. Petitioner contends these were not business debts. The trial court specifically found the plane was purchased as a business investment. Part of the money borrowed for the plane and adjoining acreage was secured by the second mortgage on the home and the first mortgage on the acreage. Petitioner in her testimony agreed the plane was shown as an investment on tax returns. The parties also boarded horses, trained riders, and used the ranch operation as a business deduction. Respondent testified that the amount of the second mortgage was used for the plane and the ranch. Thus, we cannot find the trial court's determination that these were business debts is contrary to the manifest weight of the evidence.

■■ Petitioner next contends the trial court allowed a deduction for all unsecured ordinary debts as combined in the bankruptcy proceeding. The record does not support this conclusion. Respondent proposed deductions for four debts from his gross income. One involved the second mortgage, incurred to purchase the plane and ranch. The other three involved the plane and tax liability on the plane. The trial court did not err in finding these were expenditures for repayment of debts incurred to produce income.

However, under the facts presented by the instant case, we believe the amounts should not have been deducted from respondent's income for purposes of calculating his child support obligation. Here, respondent received the bulk of the marital assets because he had the duty to repay marital debt. Thus, deducting amounts used to repay a portion of the marital debt from income for purposes of child support allows respondent a double benefit. The property awarded to him could have been used to repay these debts. Thus, the trial court erred in determining net income for purposes of child support.

■ Additionally, we note the figures used by the trial court based on respondent's income in 1987 included a deduction of $23,370 for nonrecurring income. Section 505(a)(1) of the Act does not provide for a deduction of nonrecurring income in calculating net income for purposes of child support. (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(1).) We note that on remand respondent's actual income for 1988 will be available for use by the court in its child support determination. The trial court's responsibility is to determine child support payments as

required by section 505 of the Act.

██ █ Petitioner next argues the trial court's order denying her $500-a-month rehabilitative maintenance for two years is contrary to the manifest weight of the evidence. Petitioner stated she needed the award to return to school and update her degree. An award of maintenance is within the discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 521 N.E.2d 621.) We do not adopt the concurring opinion as to maintenance. Reviewing courts should be wary of directing trial courts to make provisions for maintenance not requested by the parties. Marital misconduct and morality are not considered. "[T]he standard of living established *during* the marriage" is a proper consideration. (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)(3).) Awards of maintenance under the Act are governed by the criteria of section 504 of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 504.) The amount of marital property apportioned to each spouse is one of the factors to be considered in deciding whether to grant an award of maintenance under section 504 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 504). Because we are remanding for a division of marital property, reconsideration of maintenance is necessary. See *Partyka*, 158 Ill. App. 3d 545, 511 N.E.2d 676.

For the above reasons, we reverse the trial court and remand for further proceedings consistent with this disposition.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE STEIGMANN, specially concurring:

I concur in the opinion reached by the majority of the court. I write separately because I believe the inequities in this case are representative of similar inequities that occur all too frequently in dissolution proceedings in this State, particularly with regard to maintenance.

Maintenance is an important part of the public policy of this State and ought not be viewed with disfavor. As the majority states in its opinion, an award of maintenance is within the discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. I conclude the trial court in this case grossly abused its discretion.

Section 504 of the Illinois Marriage and Dissolution of Marriage

Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 504) sets forth the standards for awarding maintenance. An award of maintenance is warranted where the court finds that the party seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to support herself. (Ill. Rev. Stat. 1987, ch. 40, pars. 504(a)(1), (a)(2); *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269, 511 N.E.2d 156, 166.) The phrases "lacks sufficient property *** to provide for [her] reasonable needs" and "is unable to support [herself]," however, cannot mean that a party must be reduced to penury before maintenance becomes appropriate.

A proper understanding of when maintenance is appropriate under section 504(a) may be obtained from the description of the factors to be considered under section 504(b) in determining the amount of maintenance to be ordered. (Ill. Rev. Stat. 1987, ch. 40, pars. 504(a), (b).) According to section 504(b), maintenance should be sufficient to provide the spouse seeking it with the standard of living established during the marriage, except where the financial situation of the paying spouse, the duration of the marriage, or the health of either party indicates otherwise. (Ill. Rev. Stat. 1987, ch. 40, par. 504(b).) It makes no sense to say that a party is not entitled to maintenance because she is able to support herself at some level of subsistence, and then to say that if she is entitled to maintenance, it should be in an amount consistent, among other factors, with "the standard of living [established] during the marriage." See *In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1013-14, 462 N.E.2d 30, 38-39.

In the instant case, after 18 years of marriage and three children, petitioner filed a petition for dissolution. She then began to work part time as a staff nurse at a nursing home, netting only $860 per month. Although she indicated a desire to return to school to obtain a bachelor's degree in nursing, she had no income to achieve this goal (much less support herself) in the standard of living that she had grown accustomed to as the wife of an established surgeon. Respondent, on the other hand, has substantial income. As a surgeon affiliated with the Carle Clinic of Urbana, respondent had a *guaranteed* minimum gross salary of $140,000, starting in July 1988, and has the potential to earn much more.

At oral arguments, respondent's counsel was asked to consider the respective positions of these parties four years after the dissolution of their marriage. He conceded that under the *best* possible circumstances, petitioner might be able to gross $40,000 a year as a nurse, while under the *worst* possible circumstances, respondent

would continue to gross $140,000 a year as a surgeon.

Immediately prior to the dissolution of their marriage, these parties had a partnership in marriage. Viewed in a light most favorable to respondent, four years after the dissolution of that partnership, the former partners will be earning a combined gross income of $180,000. However, at *best*, petitioner is to receive only 22% of the former partners' total earnings. Respondent gets to enjoy the remaining 78% and need not suffer through retraining, as petitioner must, in order to get it.

Marriage is a partnership, not only morally, but financially. Spouses are coequals, and homemaker services must be recognized as significant when the economic incidents of divorce are determined. Petitioner should not be penalized for having performed her assignment under the agreed-upon division of labor within the family. It is inequitable upon dissolution to saddle petitioner with the burden of her reduced earning potential and to allow respondent to continue in the advantageous position he reached through their joint efforts.

What makes the denial of maintenance in this case all the more egregious is the quality of life which all of the members of this family enjoyed prior to the dissolution of marriage and which respondent will still continue to enjoy. A few of the more notable features of how they lived prior to the dissolution (and prior to a bankruptcy in 1986) are the following: a marital home with an adjoining 10-acre tract and barn and three horses maintained thereon; four motor vehicles, including a 1978 Porsche; and several airplanes purchased over the years (including one twin-engine plane) for the respondent, who is a pilot.

On remand, the trial court has been directed to take additional evidence to ascertain the current and future financial status and needs of both parties. In doing so, I conclude the trial court may use income *potential* rather than actual income on the date of the hearing (*In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 631, 450 N.E.2d 1229, 1232); and, given the relative certainty of financial predictions in this case, it may be viewed as error for the trial court not to do so. In addition, the court may take judicial notice of the fair earning power of money or invested capital over a certain time period. (*In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 612, 527 N.E.2d 18, 26.) Thus, the trial court, based upon the evidence presented, should project income four and eight years into the future, using a consumer price index adjustment. This approximation of income will enable the trial court to properly consider the real financial resources of the parties as they will be, as well as what they are at the time of the hearing.

Directing that the trial court should look four and eight years (at least) into the future as it determines what an appropriate order of maintenance should be should not be understood as requiring such an approach only on the facts of this case. Rather, such an approach is *required* whenever the evidence permits it to be utilized.

As stated earlier, section 504(b) directs that maintenance "shall be in such amounts and for such periods of time as the court deems just." (Ill. Rev. Stat. 1987, ch. 40, par. 504(b).) That section further directs the court to consider the following factors, *inter alia*, in deciding the amount of maintenance:

"(1) [T]he financial resources of the party seeking maintenance *** and his ability to meet his needs independently ***;
***

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; [and]

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1987, ch. 40, pars. 504(b)(1), (b)(3), (b)(4), (b)(5), (b)(6).)

On remand, the above-quoted factors should be the particular focus of the trial court's attention. By so focusing, the trial court will be better able to place these parties in positions of equity with regard *both* to their present financial circumstances and their future financial circumstances as well.

The denial of maintenance in this case is outrageous. In my judgment, petitioner's original request for maintenance was too paltry a sum; that she did not even get what she requested reveals the need for trial courts and the bar to reexamine attitudes too often brought to the resolution of the issue of maintenance.