No. 3--96--0307

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                 A.D. 1997

_________________________________________________________________

ILLINOIS DEPARTMENT OF PUBLIC  )   Appeal from the Circuit Court

AID, ex rel. JACQUELYNN        )   of the 9th Judicial Circuit,

JENNINGS,                      )   Knox County, Illinois

                               )

     Plaintiff-Appellee,       )

                               )

        v.                     )   No. 92--F--264

                               )

RODNEY R. WHITE,               )   Honorable

                               )   Greg McClintock,              

     Defendant-Appellant.      )   Judge Presiding.

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

     The defendant, Rodney White, appeals from an order of the

trial court which found his Federal Employers Liability Act (FELA)

settlement was "income" for child support purposes.  The trial

court based its finding on section 505 of the Illinois Marriage and

Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 1994)). 

After carefully reviewing the record, we affirm.

                                   FACTS

     On October 17, 1989, Jacquelynn Jennings gave birth to Cody

Jennings.  The defendant was never married to Jacquelynn.  The

Illinois Department of Public Aid (Public Aid) established the

defendant's paternity of Cody on April 16, 1993, and the defendant

was ordered to pay child support.  However, on August 26, 1993, the

defendant's child support obligation was abated to zero due to his

lack of income.  

     On June 15, 1992, the defendant sustained injuries to his back

while employed by Burlington Northern Railroad (Burlington

Northern).  Pursuant to FELA, the defendant filed a lawsuit against

Burlington Northern.  On September 14, 1995, the defendant settled

his case with Burlington Northern for $200,000.  

     Subsequently, Public Aid filed a petition to modify the

defendant's child support obligation.  The basis of Public Aid's

petition was the defendant's increased income from his FELA

settlement.  A hearing was held which determined that the following

expenses were deducted from the settlement amount:

        Case expenses:             $  9,285.65                   

        Attorney fees:             $ 47,678.59

        Personal expenses:         $  7,390.82

        Contribution to Railroad

        retirement board:          $  6,023.96

        Unpaid bills:              $    500.00

                                   ___________

        SUB-TOTAL:                 $ 70,879.02

     In addition to the above-referenced expenses, the defendant

testified that he borrowed $1,200 per month against his anticipated

settlement for monthly living expenses.  The total loan amount was

$37,578.87.  The defendant stated that he is currently living with

and supporting his girlfriend, as well as three additional children

he has fathered out-of-wedlock.   

      The Special Assistant State's Attorney filed two requests to

produce in an attempt to force the defendant to submit

documentation concerning the breakdown of his FELA award.  The

defendant never provided the documentation.  

     During the hearing, the defendant testified that the entire

FELA settlement was for his pain and suffering.  The following

exchange occurred during the defendant's cross-examination:

     "Q [Special Assistant State's Attorney]: Mr. White, you say

that all of this was for pain and suffering.  Do you have a copy of

a settlement statement or agreement in which that is explicitly

stated?

     A [The defendant]: That says pain and suffering on it?

     Q: Yes.

     A: I think so.

     Q: Do you have any documentation at all that that was the sole

purpose of the settlement, pain and suffering?

     A: Yeah. I think so.

     Q: What is the documentation you have?

     A: What is it?  I don't know what it is.  It's somewhere. 

It's at home and my other attorney has a copy of it.

     Q: But today all we have is your statement?

     A: That's correct."

     After hearing the evidence, the trial judge said that he was

reluctant to rely solely on the defendant's testimony concerning

the breakdown of the settlement and noted: "I'm concerned because

your client indicated that there were written documents, settlement

documents, that would support that argument.  They've not been

tendered to the court.  They've not been provided at this point and

that appears to have been the subject of a request by [the Special

Assistant State's Attorney] that has not been complied with at this

stage."  

     Following the judge's comments, the defendant's attorney

stated, "I would, therefore, request permission from this Court to

provide this Court with the written documentation concerning the

fact that this award was based upon pain and suffering."  The trial

judge then gave each side 10 days to submit any written

documentation.                 

     The defendant's attorney submitted three documents to the

court: (1) a letter from the defendant's FELA attorney, Mark

Dupont, in which Dupont states, "I checked my file and we do not

have anything from the railroad to the Railroad Retirement Board

showing that the settlement was paid to factors other than wage

loss;" (2) Dupont's settlement statement showing case expenses and

disbursements; and (3) Burlington Northern's release of all claims,

which does not specify how the award was apportioned.  

     In a letter to the attorneys after the hearing, the judge

noted, "[t]he release executed by the respondent does not specify

how the award is apportioned.  If no portion of the award

represents lost wages, it seems rather unusual that $6,023.96 of

the award was a mandatory contribution to the Railroad Retirement

Board."  The judge then concluded that the entire amount, after the

deduction of expenses, would be considered income for calculating

the defendant's child support obligation.

     On March 16, 1996, the trial court entered an order.  The

court found that the FELA settlement was income and subject to

payment of child support under section 505 of the Act.  The court

allowed $70,879.02 in deductions, but did not allow a deduction for

the defendant's loan.  The court concluded that the loan "was in

essence a part of the Federal Employer's Liability Act award."  As

a result, the trial court determined that the net income for child

support purposes was $129,120.98 ($200,000 minus $70,879.02).  

     The court then departed from the 20% statutory guideline and

awarded 15% in child support, or $19,368.15.  The judge gave three

reasons for his departure from the statutory guideline: (1) the

FELA award was a one-time distribution of a large sum of money

which would be sufficient to pay "regular" child support for a

substantial period of time; (2) the parties have a modest standard

of living which does not mandate strict compliance with the

guideline; and (3) the defendant received no income for a

significant period of time and has other support obligations.  

     The trial court ordered the defendant to pay the lump sum of

$19,368.15 to the Special Assistant State's Attorney for division

between Public Aid and Jacquelynn.  The lump sum was to come from

$20,000 retained in a trust by the defendant's FELA attorney.  

                              ISSUE ON APPEAL

     The trial court's decision to depart from the statutory child

support guidelines was not appealed.  As a consequence, the sole

issue before this court is whether the trial court erred in

concluding that the defendant's FELA settlement was income for

purposes of determining child support.

                                 ANALYSIS

     A. Standard of Review

     The findings of a trial judge as to net income and the

awarding of child support are within the sound discretion of the

trial court and will not be disturbed on review absent an abuse of

that discretion.  In re Marriage of Freesen, 275 Ill. App. 3d 97,

103, 655 N.E.2d 1144, 1148 (1995).

     B. The Definition of Net Income

     Section 505 of the Act provides that net income for child

support purposes is "defined as the total of all income from all

sources" minus various enumerated deductions.  750 ILCS 5/505(a)(3)

(West 1994).  The Act does not define "income."  The question of

whether a FELA settlement, or any portion of it, is income under

the Act is an issue of first impression in this State.

     It is well-settled law that the legislature's inclusive

language--"all income from all sources"--is to be broadly applied. 

See In re Marriage of Dodds, 222 Ill. App. 3d 99, 103, 583 N.E.2d

608, 611 (1991).  Section 505's language has been construed to

include various items such as a tax refund attributable to

maintenance payments made to a former spouse (In re Marriage of

Pylawka, 277 Ill. App. 3d 728, 732, 661 N.E.2d 505, 508 (1996));

deferred compensation contributions (Posey v. Tate, 275 Ill. App.

3d 822, 826, 656 N.E.2d 222, 225 (1995)); a military allowance (In

re Marriage of McGowan, 265 Ill. App. 3d 976, 976-77, 638 N.E.2d

695, 696 (1994)); severance pay received in the year prior to the

period for which support was due (In re Marriage of Benkendorf, 252

Ill. App. 3d 429, 447, 624 N.E.2d 1241, 1253 (1993)); a parent's

"pro forma" capital account to which his firm made allocations

based on the firm's annual performance (In re Marriage of Winne,

239 Ill. App. 3d 273, 285, 606 N.E.2d 777, 784 (1992)); income from

investments and bonuses from a closely held corporation (In re

Marriage of Olson, 223 Ill. App. 3d 636, 652, 585 N.E.2d 1082, 1093

(1992)); passive income from bonds and securities (In re Marriage

of Harmon, 210 Ill. App. 3d 92, 95, 568 N.E.2d 948, 950 (1991));

and non-recurring income (In re Marriage of Hart, 194 Ill. App. 3d

839, 850, 551 N.E.2d 737, 744 (1990)).

     Recently, in the case of In re Marriage of DeRossett, No.

80168 (September 19, 1996), the Illinois Supreme Court gave broad

effect to the language of section 503 of the Act.  The court

concluded that a worker's compensation award, arising out of a

claim accrued during the marriage, is marital property under

section 503 of the Act.  DeRossett, slip op. at 4.  The court noted

that the Act's definition of marital property as "all property

acquired by either spouse subsequent to the marriage" creates a

rebuttable presumption that all property acquired after the

marriage is marital property.  DeRossett, slip op. at 3.  

     Given the analogous language of section 505, regarding income

for child support purposes, we hold that section 505 creates a

rebuttable presumption that all income, unless specifically

excluded by the statute, is income for child support purposes.

     As the trial court noted, the record is unclear concerning the

apportionment of the defendant's FELA award.  The defendant urges

this court to remand the matter pursuant to Villanuava v. O'Gara,

___ Ill. App. 3d ___, 668 N.E.2d 589 (1996).  In Villanuava, the

court remanded the cause to enable the parties to present evidence

concerning the apportionment of the respondent's personal injury

award.  Villanuava, ___ Ill. App. 3d at ___, 668 N.E.2d at 593. 

Without addressing the merits of the Villanuava decision, we

conclude that a remand of the instant case is not warranted because

the trial court has already given the defendant numerous

opportunities to produce the evidence necessary to show that the

award was for elements other than lost wages.  Cf. Villanuava, ___

Ill. App. 3d ___, 668 N.E.2d 589.

     The record in this case clearly shows that the defendant

failed to produce the requisite information and ignored the Special

Assistant State's Attorney's pre-trial motions.  As such, we find

no abuse of discretion in the trial court's determination that the

award was entirely for lost wages.  See Dodds, 222 Ill. App. 3d at

103, 583 N.E.2d at 611 (finding that a settlement under the

Worker's Compensation Act (820 ILCS 305/1 et seq. (West 1994)) is

income for purposes of child support).

     C. The Personal Bank Loan

     Next, the defendant argues that the trial court erred in not

allowing a deduction for the $37,578.87 bank loan which he used for

personal expenses during the pendency of his FELA case.  From our

review of applicable law, we find no abuse of discretion in the

trial court's decision to exclude the loan amount as a deduction. 

     Section 505 of the Act defines net income as all income from

all sources, minus: (a) Federal income tax; (b) State income tax;

(c) social security tax; (d) mandatory retirement contributions;

(e) union dues; (f) dependent and individual health insurance

premiums; (g) prior obligations of support actually paid pursuant

to court order; and (h) expenditures for the repayment of debts

that represent reasonable and necessary expenses for the production

of income.  750 ILCS 5/505(a)(3) (West 1994); Hart, 194 Ill. App.

3d at 849, 551 N.E.2d at 743.  

     The defendant has offered no evidence or case law supporting

his position that his personal bank loan qualifies as a deduction

under any of the subsections of section 505(a)(3) of the Act.  As

such, we conclude that the trial court properly found that the loan

was part of the FELA award and not deductible under section 505 of

the Act.  See In re Marriage of Partney, 212 Ill. App. 3d 586, 593,

571 N.E.2d 266, 270 (1991) (disallowing a section 505 deduction for

a loan incurred in order to comply with the parties' property

settlement).

     D. Section 706.1 of the Act

     In addition, the defendant argues that section 706.1 of the

Act is a more exhaustive definition of what constitutes net income

for child support purposes.  Section 706.1 defines income as "any

form of periodic payment to an individual."  That section of the

Act is designed to "secure the payment of child support through

third parties who are normally obligated to pay income to the

supporting parent in the form of periodic payments."  Dodds, 222

Ill. App. 3d at 104, 583 N.E.2d at 611.  The defendant argues that

his one-time FELA settlement does not qualify as income because it

is not a periodic payment.  The trial court rejected the

defendant's argument, finding that section 706.1 does not limit the

definition of net income found in section 505.  

     The defendant's argument was made and rejected by the court in

Dodds, which stated that "[t]he definition of income [in section

706.1] is intended to define the term for the purposes of that

section only; there is no indication that it is intended to define

the term for any other purpose of the Marriage Act."  Dodds, 222

Ill. App. 3d at 101, 583 N.E.2d at 610.  We find Dodds persuasive

on this issue and find the defendant's argument without merit.  

                                CONCLUSION

     For the reasons stated, from our review of the record, we find

no abuse of discretion in the trial court's decision.  The trial

court properly concluded, based on the evidence presented, that the

defendant's FELA award was income for child support purposes. 

Also, the trial court did not err in refusing to allow the

defendant to deduct from his settlement the amount of a personal

bank loan.  In addition, the trial court was correct in rejecting

the defendant's claim that section 706.1 of the Act limits the

definition of net income for child support purposes.  Accordingly,

we affirm the judgment of the circuit court of Knox County.

     Affirmed.

     BRESLIN and HOLDRIDGE, JJ., concur.