*In re* MARRIAGE OF JUDIE RIECH, Petitioner-Appellant and Cross-Appellee, and ELMER RIECH, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—90—0310

Opinion filed January 29, 1991.

Michael B. Metnick, of Metnick, Barewin & Wise, of Springfield, for appellant.

Brown, Hay & Stephens, of Springfield (William F. Trapp and Beth A. Wilke, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner Judie Riech appeals the division of property in the dissolution of marriage proceedings between her and respondent Elmer Riech. Petitioner argues deferral of her interest in the marital home for an indefinite time is contrary to the intent of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*). Respondent cross-appeals (1) the order directing respondent to reimburse petitioner in the amount of $3,750 for marital funds used to purchase nonmarital property; and (2) the award of attorney fees to petitioner. For the reasons that follow, we affirm in part, reverse in part, and remand.

Petitioner, now age 47, and respondent, now age 49, were married on October 13, 1962. Four sons were born to the marriage and all are now over 18 years old. One son, Robert, now age 26, was severely injured in a diving accident in 1986 and is a quadriplegic. Since the accident, Robert has lived in a specially designed section of the parties' marital home.

Until her youngest child was in kindergarten, petitioner was a full-time mother and homemaker. At that time, petitioner began working one-half day a week for the Catholic Diocese in Springfield and increased to three full days a week when her youngest child entered grammar school. In 1975, petitioner began working for the diocese full time at minimum wage, while maintaining responsibility for all household chores. All petitioner's earnings were spent on the children. After a radical mastectomy in 1985, petitioner underwent radiation and chemotherapy treatments which cause her to suffer from arthritis in the cervical spine and chronic bronchitis. During the pendency of the court proceedings in this matter, petitioner began employment as a secretary at the Southern Illinois University School of Medicine. Petitioner brings home a salary of $730.80 net per month.

Respondent has been employed at the State Journal Register (Register) for over 30 years. Respondent began working in the composing room for the Register but transferred to the maintenance department in 1978. Respondent's monthly net income at the time of trial was $1,556.

The parties' marital home was remodeled to accommodate their son, Robert. In November 1986, petitioner personally took out a home improvement loan in the amount of $8,500 to pay for the remodeling. Petitioner also purchased special carpeting and flooring needed for Robert's wheelchair. Robert's quarters in the marital home were made wheelchair accessible and a nurse's station, new doors, and wir-

ing were installed to accommodate Robert's needs and the life-support system he required.

Petitioner and respondent testified the best place for Robert to live is in the marital home. Petitioner stated an institutional environment would be damaging to Robert and not allowed by the rehabilitation program where Robert has been accepted for treatment. Robert requires care and attention around the clock. When Robert first came home from the Craig Rehabilitation Center in Denver in November 1986, petitioner stated she took care of all of Robert's personal needs. Petitioner filed the dissolution petition in February 1987. Petitioner testified she moved out of the marital home in June 1988 due to the hostility and discord which existed in the household between her and respondent. Petitioner testified she moved out to reduce the stress on Robert. Petitioner testified Robert told her he wanted his father to stay with him at the marital home and not her. Petitioner testified she moved into a house her mother purchased for her and was living there rent-free with two of her sons. Petitioner testified she does pay for the utility expenses incurred in her current home. Petitioner stated she plans to reimburse her mother for the $45,000 her mother paid for the house after the dissolution proceedings are final.

At the time of trial and currently, respondent is living in the marital home with Robert, caring for his son's physical needs, and paying for some of his care. In September 1988, the medical insurance benefits for Robert's nursing services were reduced to $1,000 per month. Robert's care requires nursing services in the amount of $6,300 per month. The Illinois Department of Rehabilitation contributes $4,080 per month for Robert's care, which leaves a balance due each month for nursing services of $1,220. Initially, in 1988, respondent borrowed $17,000 from his mother and over $10,000 from his credit union to make the payments for Robert's care. By December 1989, respondent's loan from his mother for Robert's medical care amounted to $39,900. To reduce the cost of Robert's medical care, respondent performs nursing services for Robert two to three times during the week. Petitioner volunteered to work several eight-hour nursing shifts to further reduce costs but has been unable to do so because of the hostility between her and respondent. Also, Robert refused his mother's offer to work several nursing shifts. Petitioner has not contributed financially to Robert's care since she moved out of the marital home in June 1988. A personal injury action was filed on Robert's behalf to recover for his injuries but no settlement or recovery was received at the time of trial.

The parties' marital property totals $100,259.26, the most signifi-

cant asset being the marital home valued at $68,500. Other marital property includes:

| | |
|---|---|
| Copley Press 401(K) Plan | $ 6,906.25 |
| 1978 Buick Skylark | 800.00 |
| 1984 Dodge Van | 6,000.00 |
| IRA (Prudential) | 3,519.01 |
| Insurance | |
| Illinois Mutual | 1,850.00 |
| Prudential | 1,671.00 |
| Slovac | 792.00 |
| Copley Press Pension | 9,221.00 |
| Fishing Boat | 1,000.00 |
| | $31,759.26 |

Respondent's nonmarital property includes real estate valued at $11,500. The parties' marital debts total $34,626.18 and are itemized as follows:

| | |
|---|---|
| Security Federal Savings & Loan | $ 4,000.00 |
| Printers Unions (Elmer's credit union) | 10,259.00 |
| Debt to Elmer's mother | 13,000.00 |
| Dr. Setko | 90.00 |
| Dr. Hawe | 100.00 |
| Watts Pharmacy | 73.00 |
| Vision Care Assoc. | 150.00 |
| Sears | 277.00 |
| Sacred Heart Credit Union | 6,186.18 |
| Huffman Finance | 491.00 |

Judgment of dissolution was entered on June 16, 1989. Respondent was awarded physical custody of Robert and ordered to be solely responsible for the support and the unreimbursed medical care for Robert. Petitioner was ordered to support Robert by working one nursing shift during the week and one every Saturday. The trial court found that due to the disparity of income between the parties, petitioner's physical condition, her contribution to the marriage and the duration of the marriage, petitioner was entitled to maintenance. However, because of respondent's obligation of support for Robert, he was unable to pay maintenance. Thus, the trial judge awarded petitioner, in lieu of maintenance, $34,250, representing a one-half interest in the marital home, as well as the 401K plan, the Slovac insurance policy, and the Buick, or a total of $42,748.25 in marital assets. Respondent received the marital home, the van, the Prudential IRA, the two insurance policies, the pension

plan, and the boat for a total of $57,511.01 in marital assets. In lieu of child support for Robert, petitioner was ordered to pay $6,677.18 of marital debts. Respondent was ordered to pay the remaining marital debts in the amount of $27,949. Respondent received his nonmarital property but was ordered to pay petitioner, on or before May 26, 1990, $3,750 as reimbursement for the marital funds used to purchase the nonmarital property. Petitioner was ordered to pay one-half of her attorney fees. Respondent was ordered to pay $3,701.17 to petitioner's attorney, representing one-half of petitioner's attorney fees and to pay his own attorney fees. Respondent was directed to pay petitioner the $34,250 within six months of May 26, 1989. Judgment was entered for petitioner in the amount of $44,906.25. This figure includes her interest in the marital residence, the 401K plan, and the reimbursement to the marital estate.

On June 16, 1989, respondent filed a motion for reconsideration of the judgment. Respondent contended, *inter alia*, (1) the disposition of marital property and debts was inequitable, including the requirement that he pay petitioner her interest in the marital residence within six months; (2) the nonmarital property was purchased with nonmarital funds; therefore, petitioner was not entitled to any reimbursement; (3) the requirement that petitioner provide nursing care for Robert was against Robert's wishes and not in his best interests; (4) petitioner should be equally responsible for Robert's future medical expenses; and (5) the order that he pay one-half of petitioner's attorney fees was contrary to the law.

On April 6, 1990, a modified judgment was entered. The trial court found a settlement had been reached in Robert's personal injury suit which allowed Robert to remain self-sufficient under his then current circumstances and to retain a lump sum of money. The modified judgment provided (1) petitioner was relieved of her obligation to provide nursing services for Robert, based upon the parties' and Robert's belief that such services would not be in his best interests; (2) petitioner was not obligated to financially contribute toward Robert's medical expenses "at this time"; (3) respondent was to pay petitioner one-half of her interest in the marital home, or $17,125, on or before June 17, 1990; and (4) the remaining one-half or $17,125, with interest at the statutory rate from April 5, 1990, was to be paid (a) within six months of the date Robert no longer resides in the marital home, or (b) at the time of sale of the marital home prior to Robert's departure.

Petitioner argues the disposition of the marital home by delaying the payment of $17,125 until Robert no longer resides in the

home amounts to an illusory property interest because of the indefiniteness of when and the uncertainty of if the payment will ever be made. Petitioner contends Robert will always need to live in the marital home and will likely outlive her and respondent. Further, since respondent has possession of the home, he has control over when it is sold while Robert still resides in the home while she does not. Petitioner urges an indefinite payment time is contrary to the intent of the Act which seeks to end the animosity and discord which led to the dissolution of a marriage. Petitioner does not ask that the marital home be sold. Petitioner maintains respondent could take out another mortgage on the marital home, which is currently encumbered by a $4,000 first mortgage. Petitioner argues respondent's income is sufficient to pay a second mortgage on the marital home. Alternatively, petitioner argues respondent could mortgage the nonmarital property he owns free and clear.

Respondent contends he is unable, due to his obligation to support Robert, to incur any more debt. Further, given the equities of this situation, petitioner should not have received the equivalent of 50% interest in the marital home. Respondent rejects petitioner's illusory property interest argument by pointing out that the Illinois courts have approved the deferral for a set period of time of unascertained property interests. Respondent suggests this court could reduce petitioner's equity interest in the marital home to 25% or $17,125 and thereby avoid the necessity of deciding petitioner's issue.

In her reply brief, petitioner points out the trial court rejected respondent's invitation to reduce her share of marital property and stated the property distribution would not be altered "because the parties and Robert will not cooperate with each other in Robert's care." Petitioner argues respondent's reliance on cases where an unascertained amount of money was deferred for a set period of time is misplaced because the issue here is the indefiniteness of when, if ever, petitioner will receive her payment, not the amount of that payment.

■■ ■ Section 503(d) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)) allows the trial court discretion to divide marital property into "just proportions," taking into consideration all of the factors listed as well as any others deemed relevant to the case. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241.) The touchstone of proper apportionment is whether it is equitable in nature, with each case resting on its own facts. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 847, 551 N.E.2d 737,

741.) The division need not be equal to be equitable. (*Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.) The trial court's discretion in these matters will not be disturbed absent clear abuse. (*In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 790, 560 N.E.2d 374, 378.) Discretion has been abused where no reasonable man could adopt the trial court's position. *Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.

■ The courts have upheld the award of a family home to a custodial parent of minor children until such children reach majority. (*In re Marriage of De Bat* (1984), 127 Ill. App. 3d 463, 468 N.E.2d 1348; *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811; *In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636, 406 N.E.2d 1142.) There are no Illinois cases involving the award of the marital home to a parent with custody of an adult disabled child.

■ In our view, the trial court erred in considering Robert's situation and needs when dividing the property between petitioner and respondent. Section 513 of the Act directs the court may award child support for any nonminor physically disabled children of a marriage, but this provision does not extend to Robert who, all the parties agree, was emancipated at the time of his accident. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) Section 503 provides marital property is to be divided into just proportions and, in so dividing, the court may consider, *inter alia*, the liabilities of each of the parties. (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(7).) The parties' desire to care for Robert, particularly the respondent, is understandable under the circumstances. Nonetheless, any feeling of obligation is morally and not legally cognizable. This court does not dismiss lightly the situation this family is in. The fact remains the parties have no remaining legal obligation to support Robert. Accordingly, we find the division of the marital home in terms of Robert's needs and any court-ordered child support for Robert is reversible error.

■ In further support for our conclusion, we note the Illinois courts have criticized the division of marital property where the disposition may result in a party never receiving a possessory interest during his lifetime (*McArdle v. McArdle* (1977), 55 Ill. App. 3d 829, 370 N.E.2d 1309), where the time for payment is not definite (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087), and where the parties are forced to continue associating with one another as tenants in common of property. (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.) In *McArdle*, the ex-wife was given a life estate in the marital home with the remain-

der interest passing to the ex-husband. The court noted the ex-husband's interest would possibly never take effect during his lifetime. Thus, the court reversed the division of the marital home as life tenant and remainderman. In *Hellwig*, the ex-husband was directed to pay his ex-wife a sum of money but no specified time was set. The court remanded the judgment of dissolution for the other reasons but stated that, on remand, the trial court must devise a feasible method of paying the ex-wife her interest within a reasonable time of the judgment.

■ The trial judge noted in the modified judgment that the settlement left Robert self-sufficient under his then current circumstances. Further consideration should have been given to other alternatives to providing petitioner with her interest in the marital property and to the fact that Robert's settlement provides him the financial means to support himself. On remand, the trial court should consider other alternatives, including a reasonable and definite schedule of payments for petitioner's interest in the home.

In his cross-appeal, respondent first argues the trial court erred in ordering him to reimburse petitioner for marital funds used to purchase the nonmarital real estate in St. Elmo. The trial court found real estate in St. Elmo to be respondent's nonmarital property. The trial court found it was unclear whether marital funds were used to purchase a partial interest in the St. Elmo property and resolved the ambiguity in favor of finding the funds used to purchase a partial interest in the nonmarital property were marital funds.

Respondent testified as an adverse witness for petitioner that the St. Elmo property was previously owned by his father, who died in 1983. At that time, respondent's father was involved in divorce proceedings with his second wife, Wilma Riech. The father's will bequeathed all his property to his three children, including respondent. Wilma claimed a statutory share of the estate as surviving spouse. To settle the claim, respondent paid Wilma $11,000, of which $7,500 was for the St. Elmo property and $3,500 was to release other claims Wilma had against the estate. Respondent then acquired title to the St. Elmo property in his own name. Respondent testified he borrowed the $11,000 from his mother to pay for the St. Elmo property by taking money out of his mother's savings account at Security Federal.

Petitioner testified respondent withdrew the money to pay for the St. Elmo property from a savings account at Security Federal. Petitioner stated respondent told her in 1987 that the money in the

savings account came from his mother, who gave respondent her railroad pension check each month to be deposited into this account. Petitioner testified respondent deposited the check into this account, which was in respondent's name ·with her (petitioner) "as trustee or beneficiary." Petitioner further stated she first found out about this account in 1987 when she was preparing the 1986 Federal tax return which she and respondent filed jointly. Petitioner testified she received a tax statement from Security Federal in 1987 which reflected she and respondent earned $585 on this savings account "jointly." According to petitioner, respondent's mother wanted him to have the money to buy the St. Elmo property for himself.

The evidence established that respondent's mother gave him the money which was deposited into a bank account in some form of coownership with petitioner. Section 503(b) of the Act provides that all property acquired by either spouse after the marriage is presumed marital property. However, this presumption is overcome by showing that the property was acquired by a method listed in section 503(a) of the Act. (Ill. Rev. Stat. 1987, ch. 40, pars. 503(b),(a).) Section 503(a)(1) states that property acquired by gift after marriage is nonmarital property. (Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(1).) As we stated in *In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 560 N.E.2d 374, property designated as nonmarital pursuant to the exceptions in section 503(a) may still be presumptively transmuted into marital property by the affirmative act of the contributing spouse. The transmutation doctrine is based on the presumption that the contributing spouse intended to make a gift of the property to the marital estate. (*In re Marriage of Olson* (1983), 96 Ill. 2d 432, 439, 451 N.E.2d 825, 828.) The ·placement of nonmarital property in joint tenancy or some form of coownership raises the presumption that a gift was made to the marital estate. The presumption of a gift transforming the property into marital property may be rebutted by clear and convincing evidence that no gift was intended. *In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 280, 518 N.E.2d 1316, 1319.

By its decision, the trial court found the presumption of gift to the marital estate was not rebutted. The evidence regarding the form of coownership for the bank account was conflicting but nonetheless it established the account was held in a form of coownership. Respondent did not present any evidence that he did not intend a gift to the marital estate. Thus, the trial court's finding that marital funds were used to purchase St. Elmo is supported by the evidence.

Respondent next argues the trial court erred in ordering him to pay one-half of petitioner's attorney fees in addition to his own attorney fees since the evidence failed to show that petitioner was unable to pay these fees or that he was able to pay them. Petitioner argues the trial court was correct in ordering respondent to pay a portion of her fees since he has the superior earning power. In his reply brief, respondent contends the court should have looked at the larger context and not focused solely on the disparity in income levels.

■■ The allowance of attorney fees and the proportion to be paid by each party are within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235; *In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 400, 561 N.E.2d 402, 411.) The party seeking fees must show an inability to pay the fees and an ability of the other spouse to pay the fees. *Bussey*, 108 Ill. 2d at 299-300, 483 N.E.2d at 1235.

■■ The trial court's order directs the payment of attorney fees by petitioner and respondent but fails to include any findings regarding the factors considered in the apportionment of attorney fees. The evidence established respondent earns more than twice what petitioner earns per month. Respondent's monthly expenses, excluding the shortfall in medical expenses for Robert ($1,596.24), exceed his monthly income, established at trial to be $1,556, by less than $50. Petitioner's monthly expenses are approximately $560 per month and do not exceed her monthly net income of $730.80. Respondent has superior earning power but significantly more debt. The record fails to establish petitioner is unable to pay her attorney fees and respondent is able to. The order regarding attorney fees is reversed.

■■ In light of our determination the trial court erred in the disposition of the marital home, this cause is reversed and remanded for reconsideration of the property division and award of attorney fees. The order directing respondent to reimburse petitioner in the amount of $3,750 is affirmed.

Affirmed in part; reversed in part and remanded with directions.

LUND, P.J., and GREEN, J., concur.