*In re* MARRIAGE OF JODE ANN NUECHTERLEIN, Petitioner-Appellee, and LOUIS STANLEY NUECHTERLEIN, Respondent-Appellant.

Fourth District   No. 4—91—0147

Opinion filed January 30, 1992.—Rehearing denied March 9, 1992.

Wayne R. Galomb, of Springfield, for appellant.

Thomas R. Appleton and Elizabeth W. Anderson, both of Morse, Giganti & Appleton, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

The parties were married on October 11, 1980, and separated on June 9, 1988. On September 16, 1988, petitioner petitioned for dissolution of marriage and for custody of their two minor children. The dissolution judgment awarded petitioner custody of the children and apportioned marital property and debts of the parties. Respondent appeals, arguing (1) the trial court erred in refusing to enforce the parties' premarital agreement to raise their children Lutheran, (2) the trial court abused its discretion in imposing all transportation responsibilities for visitation on him, and (3) the trial court abused its discretion when it apportioned virtually all of the parties' marital debts to him. We affirm the trial court's ruling on these issues.

## A. Religious Training

At trial, respondent testified both children were baptized at the Lutheran church in Sawyer, Michigan, and regularly attended the church. Respondent indicated that prior to their marriage the parties discussed the religious education of their children and orally agreed to raise any future children in the Lutheran faith. Respondent is Lutheran, and although petitioner is Catholic, respondent asserted she attended the Lutheran church, practiced the Lutheran faith following their marriage, and raised the children Lutheran. Petitioner confirmed discussing with respondent the religious upbringing of their children and specifically admitted agreeing with him that they would raise their children as Lutherans. Respondent requested the court make a provision providing for the continuation of the religious training of the children in the Lutheran faith.

The petitioner's lawyer asked the respondent to explain the difference between the Catholic and Lutheran religions. Respondent's counsel objected to the inquiry. The judge responded that "regardless of what [respondent] said or did not say or what they may have said prior to their marriage, [the court] couldn't make a determination as to who should require the children to go to what particular [religion] ***. That's within the purview of whoever is the custodial parent." Respondent's attorney argued that the court did have the authority to order the custodial parent to raise the children in a particular faith. The court stressed that absent a written agreement by the parties, it did not have the authority to require the custodial parent to take the children to the Lutheran church or to make a determination that a child has to go to a particular church. Respondent continued to insist the court had the authority to enforce the agreement. Under section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 502), the court noted terms of agreements providing for the support, custody, and visitation of children were not binding on it. Therefore, regardless of whether an oral premarital agreement existed, the court stated that it was inappropriate under section 502 of the Act to base an order requiring a child to be raised according to the tenets of a particular religion upon the parties' premarital agreement.

## B. Travel Involved In Visitation

Prior to their separation, the parties resided in Three Oaks, Michigan. Upon separation, petitioner and the children moved to Springfield, Illinois. Respondent maintained an apartment in Chicago, where

4

he was employed, and also maintained the marital residence in Michigan. Based on the temporary custody order, respondent had alternate weekends of visitation, during which he took the children to Michigan. Respondent testified that because the children now reside with their mother in Springfield, Illinois, he has to drive approximately 800 miles to see the children for 48 hours. He had to pick the children up Friday at 6 p.m. in Springfield and return them by 6 p.m. on Sunday. He asserted it was impossible to leave work at 5 p.m. in Chicago and pick the children up by 6 p.m. Moreover, he stated this process was mentally draining and exhausting for him. Occasionally, his job allowed him to be in Springfield on Friday so he could pick the children up for visitation. Further, he asserted that petitioner, on two or three occasions, had driven the children to Pontiac, Illinois, where the parties exchanged the children. However, respondent stated petitioner had subsequently refused to continue sharing in the driving responsibilities because he "would [not] allow her to bifurcate the matter in court and get remarried." The times when she had met him in Pontiac, she had driven either her father's car or that of a friend. The reason she borrowed a vehicle was because the truck she had been allocated pursuant to stipulation was uncomfortable for three people to sit in for an extended period of time. Respondent requested that the court order petitioner to share in the driving responsibility for the children's visitation with him.

### C. MARITAL DEBT

The parties had marital debts, including the following:

| | | |
|---|---|---:|
| (1) | First Source Bank—secured by liens on 1986 BMW 32SE and 1982 Chevrolet S-10 pickup truck | $11,000 |
| (2) | Nellie Katauski and Joseph Katauski—loan for marital residence | 39,253 (or 56,251.97) (amount of loan disputed) |
| (3) | W.W. Nuechterlein—loan for marital residence | 50,000 |
| (4) | Northern Trust Company | 2,410.00 |
| (5) | Bank of Commerce | 1,497.34 |
| (6) | Citibank | 682.88 |
| (7) | MBNA | 6,882.96 |
| (8) | Springfield Marine Bank | 245.98 |
| (9) | Real estate taxes on marital residence | 7,640.00 |

Respondent testified that the debts were incurred to get the "finer things in life." Because he did not feel he could do this with his income from his State job, he had opened an antique business. Since he did not have the capital to buy the antiques, he had used his personal credit cards and the credit based on the cards to purchase the items for the business. He averred petitioner had been actively involved in the antique business and was aware the debts were being incurred. Additionally, he stated the credit cards were issued in both their names, and petitioner used the cards as well.

Conversely, petitioner testified she only had one credit card at the time of the separation, and the card was from MBNA. Also, she stated she had made purchases on the MBNA account but never participated in making purchases on any of the other accounts. She testified respondent had purchased the antiques, and she had contributed no money except $1,000 which she made by selling crafts.

The $11,000 owed to First Source Bank was a loan to purchase respondent's BMW. The loan was secured by the BMW and the pickup truck. Prior to the loan, the truck was lien free. Additionally, to purchase the house in Three Oaks, Michigan, the parties borrowed $50,000 from their respective families.

Respondent works for the Department of Revenue, Board of Appeals, as an administrator. His monthly net income is approximately $2,800. Petitioner works part time as a school aid and makes approximately $200 a month.

### D. JUDGMENT ORDER

In a letter dated October 22, 1990, the court found it was in the best interest of the children to award the petitioner sole and permanent custody of the children. The court stated that the petitioner would determine the religious training of the children and "[f]or the [c]ourt to order otherwise would be going beyond the scope of religion vis-a-vis 'best interest of the children' and would be violative of both the [Act] and constitutional safeguards." Additionally, the court awarded the respondent visitation and indicated that he would be responsible for all the children's transportation to and from visitation. In regard to the marital debts, the court ordered petitioner to pay half the MBNA account, and respondent to pay all of the other pre-separation debts.

Further, the court ordered the Michigan house be sold. The court distributed the proceeds of the sale based on the stipulated value of the house. The distribution was as follows:

| | |
|---|---|
| $200,000.00 | stipulated value |
| - 4,000.00 | realtor's commission |
| - 56,251.97 | balance of Katauski loan |
| - 50,000.00 | balance of Nuechterlein loan |
| $ 89,784.03 | net equity |

From the $89,784 net proceeds, the court awarded $59,832 to petitioner. Respondent was to bear responsibility for any outstanding balance for real estate taxes, and he was awarded the remaining proceeds of the sale. Additionally, the court ordered the respondent to pay the petitioner $670 per month for child support and no maintenance.

The court entered a judgment order on November 2, 1990, in which it stated it was "in the best interest of the minor children that the Petitioner be granted the permanent care, custody, control and education of the minor children *** including the right to determine their religious training." On November 30, 1990, respondent motioned for reconsideration of the order. He contended the balance of the loan due to the Katauskis was $39,253, instead of $56,251.97. Consequently, on January 18, 1991, the court amended its order and reduced the amount owed to the Katauskis to $39,253. The petitioner still received $59,832 from the net proceeds, with respondent receiving the balance. This appeal followed.

## E. ANALYSIS

■■ Section 502(a) of the Act authorizes and promotes parties to a marriage attendant upon its dissolution to enter into written or oral agreements regarding the disposition of property, maintenance, support, custody, and visitation. (Ill. Rev. Stat. 1989, ch. 40, par. 502(a).) However, section 502(b) of the Act specifically states that agreements providing for the custody of children are not binding on the courts. Ill. Rev. Stat. 1989, ch. 40, par. 502(b).

■ Section 608(a) of the Act specifies that a custodial parent will determine the religious training of the children unless as otherwise agreed by the parties in writing at the time of the custody judgment, by court order, or upon motion by the noncustodial parent where the absence of a limitation would be contrary to the best interest of the children. Ill. Rev. Stat. 1989, ch. 40, par. 608(a).

■ Regardless of whether a premarital agreement existed in this case, we hold that it was not binding on the court because it was not the type of agreement intended to be binding under the

statutory provisions. The agreements contemplated by those sections are those entered into concomitant with dissolution proceedings. Although both sections sanction agreements regarding custody and provide that particular agreements are binding and enforceable, those sections, when determining custody provisions, do not apply to agreements made prior to marriage. The reason for this is clear. In determining custody matters, section 602(a) of the Act directs the court to "determine custody in accordance with the best interest of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 602(a).) The primary consideration regarding custody is what is in the best interest of the child at the time of the custody judgment. The current state of affairs is the primary focus, not the existence of an agreement entered into years earlier. This is not to say, however, that a court may not consider a premarital agreement as a factor in its custody decision. Although it may be a relevant factor in the court's determination, the existence of the agreement, in and of itself, is not binding.

Although premarital agreements relating to maintenance and property settlements are binding and enforceable unless unconscionable, these agreements are far different than those relating to custody. Children are far more important than the subjects of maintenance and property settlements, and the court has a duty to protect their welfare by making a careful and independent determination of custody. In doing so, a court cannot be bound by agreements entered into prior to marriage.

Moreover, since the court awarded petitioner custody, section 608(a) of the Act directs that her decision regarding the religious training of the children will control, absent a written agreement, court order or exigent circumstances. Although the judge was made aware of the religious background of the children and the request by respondent to have the children raised in the Lutheran faith, no specific ruling was made under section 608(a). In the interest of judicial economy and because the record is such that a determination may be made, we hold that there is insufficient evidence for the respondent to meet his burden to permit a finding that the absence of a limitation regarding the religious upbringing of the children would be contrary to their best interests.

In view of our ruling on this issue, there is no reason to determine whether the enforcement of the premarital agreement would violate the establishment clause.

We turn next to determine whether the apportionment of transportation responsibilities connected with visitation to the re-

spondent was an abuse of discretion. The trial court is vested with broad discretion in resolving issues surrounding custody. A reviewing court will not substitute its judgment for that of the trial court unless the trial court clearly acted arbitrarily and beyond the bounds of reason. (*Szesny v. Szesny* (1990), 197 Ill. App. 3d 966, 971, 557 N.E.2d 222, 225, citing *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 180, 478 N.E.2d 1068, 1076; *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676, 680; *Head v. Head* (1988), 168 Ill. App. 3d 697, 702, 523 N.E.2d 17, 21.) The mere fact that reasonable persons could reach different conclusions on the facts of the case is insufficient to find that the trial court abused its discretion; only if no reasonable person could find as the trial court did is there an abuse of discretion. *Szesny*, 197 Ill. App. 3d at 971, 557 N.E.2d at 225, citing *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129; *In re Marriage of Ryan* (1985), 138 Ill. App. 3d 1077, 1080, 487 N.E.2d 61, 63.

The trial court's ruling was not an abuse of discretion. The ruling was supported by the fact that petitioner testified she was allocated, by stipulation, a 1982 pickup truck. She stated it was uncomfortable for three people to sit in the cab. Based on this fact alone, the trial court did not abuse its discretion.

■ We further find the apportionment of debts was not an abuse of discretion. Section 503(d) of the Act grants the trial court discretion to divide marital property into "just proportions," taking into consideration all the factors listed, as well as any others deemed relevant to the case. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d); *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241; *In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 381, 571 N.E.2d 1135, 1142; *In re Marriage of Riech* (1991), 208 Ill. App. 3d 301, 308, 566 N.E.2d 826, 830.) The touchstone of proper apportionment is whether it is equitable in nature, with each case resting on its own facts. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 847, 551 N.E.2d 737, 741.) The division need not be equal. (*Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.) The trial court's discretion in these matters will not be disturbed absent clear abuse. (*Riech*, 208 Ill. App. 3d at 309, 566 N.E.2d at 830; *In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 790, 560 N.E.2d 374, 378.) Discretion has been abused when no reasonable person could adopt the trial court's position. *Hart*, 194 Ill. App. 3d at 847, 551 N.E.2d at 741.

Based on the factors set out in section 503(d) of the Act, specifically the disparity of income between the parties, the facts that petitioner was awarded custody and respondent did not have to pay maintenance, the division of the marital debts was not an abuse of discretion.

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.