*In re* MARRIAGE OF BRIAN WINNE, Petitioner-Appellee, and KAREN WINNE, Respondent-Appellant.

Second District   No. 2—92—0107

Opinion filed December 30, 1992.—Rehearing denied February 2, 1993.

Maureen Flaherty, of Lehrer, Flaherty & Canavan, P.C., of Wheaton, for appellant.

Robert R. Verchota, of Donovan & Roberts, P.C., of Wheaton, for appellee.

JUSTICE GEIGER delivered the opinion of the court:
The court dissolved the marriage of the petitioner husband, Brian Winne, and the respondent wife, Karen Winne. The wife brought this appeal from the court's allocation and distribution of marital assets and debts, its dismissal of her petition for attorney fees, and its calculation of support for the couple's three children. We reverse and remand for further proceedings.

The parties were married in September 1974, when the wife was 21 years old. Before the marriage, the wife had attended two years of college and worked for one year to save money. After their marriage, the wife worked until November 1975, when the husband's employer, Arthur Andersen, transferred him to Australia for 2½ years. Three children were born to the marriage: in August 1979, December 1981, and September 1986.

In December 1980, the parties purchased the marital residence for $104,000. The wife stayed at home with the parties' three children, who were born in 1979, 1981, and 1986. The husband's compensation from Arthur Andersen was $63,645 in 1986. In 1987, after he became a partner, he earned $138,663; his 1988 income was $172,661; in 1989 he earned $200,997. At trial, the husband testified that he had received $265,299 in total distributions from Arthur Andersen during 1990.

In 1987, the parties spent approximately $112,000 to remodel the marital residence, converting a construction loan into a mortgage loan. The husband vacated the marital home in February 1988 but continued to pay the $2,244 monthly mortgage payment, tax, and insurance on the residence. At the time of trial, the mortgage balance was approximately $187,000; the husband valued the home at $300,000; the wife valued the home at between $275,000 and $285,000.

The couple owned two vehicles. One was a 1983 Oldsmobile Cutlass Sierra against which there was no lien. According to the husband, it had a value of approximately $750, and according to wife its value was approximately $1,500. The parties' other car was a 1987 Plymouth Voyager which had 18 loan payments of approximately $266 remaining due, for a total lien of $4,788. Its value was approximated at $10,000 by the husband and $8,500 by the wife.

The parties' only savings account was in the husband's name and had an approximate balance of $72,000 on February 1, 1991. The husband's checking account was valued at approximately $6,000.

The court valued the husband's Arthur Andersen partnership interest at $42,750 as of August 1990. The husband's Keogh account was valued at $40,849. The court also received evidence that the husband had received a 1989 tax refund of $24,944. The husband also had a *"pro forma"* capital account. His firm makes allocations to that account, based on the firm's annual performance. The husband is required to retain a portion of those allocations as supplemental capital. The funds left in the account accrue interest until they are withdrawn pursuant to the account holder's request. In 1990, the firm allocated $41,417 to the husband's account; that amount was based on the firm's 1989 performance. The amount the husband was required to retain as supplemental capital for 1990 was $3,750.

The wife testified that the furnishings in the marital residence had a value of $15,000. The husband valued the furnishings at $40,000, basing his valuation on the furnishings' cost.

The wife's sole income, when the husband left the marital residence in February 1988, as before, was money he provided. According to the wife, in the beginning of 1988, the husband provided her with approximately $1,500 monthly. In November, he decreased his monthly payment to $300. In December, the wife opened several department store credit accounts in her name and used them to make purchases for herself, the children, and the house. In 1989, she opened Discover and Mastercard accounts. In January 1989, the husband resumed $1,500 monthly payments, pursuant to court order.

In October 1989, a new court order required the husband to pay $3,500 in monthly temporary maintenance. The order provided that his payments for mortgage, insurance, taxes, and car loans were to be deducted from that amount. The wife was left with approximately $1,000 monthly. According to the husband, he made the following direct payments to the wife: $22,687 in 1988; $19,974 in 1989; and $11,789 in 1990. According to the husband's calculations, his direct payments to the wife for the 34 months at issue averaged $1,601 monthly.

After the husband moved from the marital residence, the wife began gainful employment in April 1989. Then, she became licensed and opened an in-home day-care center. She continued the day-care work until August 1990. Her 1989 tax return shows that the day-care business had a gross income of $7,700. In September 1990 she obtained part-time employment at Glen Ellyn News, earning a gross weekly amount of $117. She testified that she had little training for employment and that she had never done secretarial work. She planned to begin full-time work at Glen Ellyn News. The wife's debts incurred after the separation include $15,000 of credit card debt; a $2,500 debt to her father and brother for a retainer for her first attorney; $13,000 in attorney fees to her first attorney; $250 to her accountant; and a $2,000 cash advance she took for a retainer for her second attorney. Her affidavit of monthly expenses shows expenses of $5,539 monthly.

In his 1989 tax filing, the husband filed as a single taxpayer, claiming each of the parties' three children as a deduction. He also deducted $19,974 in alimony, plus his payment of mortgage interest. His expense for medical insurance for himself and the three children is approximately $3,578.

The husband also covers a $1 million term life insurance policy with a $1,300 annual premium. Additionally, as an Arthur Andersen partner the husband is required to make a certain level of charitable contributions. His mandated contributions for 1989 were $10,315; $5,322 of that amount were paid directly by Arthur Andersen. His

Arthur Andersen partnership also causes him to pay principal and interest on his partnership loan and to meet certain unreimbursed expenses. He estimated that his annual cost for charitable contributions, partnership loan payments, and unreimbursed expenses equals between 6% and 8% of his gross income.

Regarding tax payments, the husband testified that Arthur Andersen does not withhold taxes for its partners. He pays conservatively estimated quarterly tax payments and applies overpayment to future tax liability. For 1989, his State income tax payments were approximately $7,500 on his $200,997 income. He also paid $41,906 in Federal income tax and $6,250 in self-employment tax. His $21,702 tax overpayment was applied to his 1990 estimated taxes.

In its dissolution order, the trial court granted the parties joint custody of the children; residential custody was awarded to the wife. The husband was ordered to pay $3,850 in monthly child support. That amount was based on the husband's 1990 net income, as indicated by the wife; it did not reflect the husband's 1990 *pro forma* capital account allocation of $40,969.

The court also found that the husband's election to draw down his *pro forma* capital account with the firm during the past three years had increased his taxable income, decreased his net income, and increased his prepayment of taxes pursuant to Arthur Andersen's policy. The court noted that the husband had not designated an amount for drawdown in 1991. Also, the court ordered that the husband would be entitled to dependency tax exemptions for the two older children; the wife was awarded the dependency tax exemption for the youngest child.

The court additionally found that the wife was presently unable to adequately support herself, and it ordered the husband to pay $750 monthly in nonmodifiable rehabilitative maintenance. Maintenance was ordered payable for two years or until the occurrence of a statutory termination event.

The court ordered the parties to equally share day-care expenses for the children. It also ordered the husband to continue to pay medical, dental, and life insurance for the children's benefit and to pay the children's health expenses costing $100 or more per incident. The court made no specific provision for college expenses, but stated that those expenses would be governed by section 513 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 513).

Under section 503 of the Act, the court noted the great disparity in the parties' relative abilities to acquire capital assets and income. It

found that the marital home had a value of $300,000, with $113,000 equity; and it ordered the husband to quitclaim his interest in the home to the wife. The wife was to assume all liability on the property.

The court awarded the husband his $72,000 savings account that had been designated for payment of taxes. It also awarded him his $40,849 Keogh savings, his $6,000 checking account, his $42,849 Arthur Andersen partnership interest, the 1983 Oldsmobile, and his coin collection. The court placed no value on the furnishings in the marital residence, but provided that if the parties did not agree upon division of the furnishings, they would be sold at auction. In either case, the wife would receive 60% of the appraisal or proceeds. The wife also was awarded the 1987 Voyager.

The court specifically found no dissipation. It divided the marital portion of the husband's non-Keogh retirement benefits, awarding 60% to the wife. Regarding the husband's *pro forma* capital account, the court ordered the husband to inform the wife if that account was used for ordinary income. Regarding the $35,000 that had been allocated to that account for 1991, the husband was ordered to pay the wife 60% of that amount. Additionally, the court ordered that any Federal tax refunds received in cash be paid 60% to the wife.

The court assigned to the wife all debts she had incurred since the parties' separation. That debt included her attorney fees. The court also awarded her the checking and savings accounts in her name, approximately $90.

Following a further hearing, the court dismissed the wife's petition for attorney fees and denied reconsideration. The wife brought this appeal.

The wife's first argument on appeal is that the court abused its discretion in the distribution of the marital assets and debts. According to the wife's calculation, she received approximately 40% of the marital assets, with her share being further depleted by her tax liability on her share of the husband's *pro forma* account. Further, according to the wife, considering her lack of liquid assets and the extent of her credit card and attorney fee debt, she would need to liquidate every asset to pay her indebtedness.

According to the wife, the husband, in contrast, is left virtually debt free, with the lion's share of the couple's assets. She notes his superior ability to accrue assets. Additionally, the wife challenges the court's ruling that the parties' tax refunds should be divided only if the refund is received in cash rather than being applied to future tax liability. Further, the wife objects to the court's reasoning underlying its award of the husband's $72,000 savings account for his payment of

taxes. The wife argues that the husband already had paid estimated taxes of $82,000 and that those completed payments will be more than sufficient to cover the husband's actual 1990 Federal and State tax liability.

Another specific objection raised by the wife regards the court's treatment of the parties' furnishings. She asserts that the court ignored both her inventory and her testimony as to the furnishings' value. She also asserts that the court ignored the fact that during the proceedings the husband purchased furniture shown to have an approximate value of $15,000, using funds from a savings account. According to the wife, in recognition of the allocation of marital funds to purchase the husband's furniture, an equitable and fair distribution would allocate the furnishings in the marital residence to her.

According to the wife's summary, considering the length of the marriage, her contribution as a homemaker and mother, her significantly lower earning potential, and her lesser prospects for acquiring assets in the future, no reasonable person would make this asset and debt distribution.

Under section 503(d) of the Act, the trial court must divide the marital estate in just proportions; relevant factors include the duration of the marriage; each party's contribution to the family unit, including a homemaker's contribution; the relative economic circumstances of each spouse at the time the division becomes effective; the spouses' relative abilities for future acquisition of assets and income; and tax consequences of the division. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) The division of the marital estate rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 207.) The court's division of assets will be disturbed only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 30.

In arguing against disturbing the court's property division, the husband notes that when he left the marital residence in February 1988, he left the wife debt free, excepting the loan balance on the Voyager and the remaining mortgage debt. He paid all outstanding credit card and contractor debts. Further, through the time of trial, he paid all mortgage, tax, and insurance costs for the marital residence and all the loan and insurance payments on the Voyager. He suggests that considering those amounts and the direct payments that he made to the wife, the wife's claims that his payments did not satisfy her expenses demonstrate her wrongful spending and her efforts to "get even with him."

The husband also argues that the wife's calculation of the parties' relative shares of the award omits the distribution of equity in the marital furnishings and in the automobiles. He additionally notes the lack of liquidity in his *pro forma* account, his Keogh account, and his partnership interest. Further, he notes the expenses, including tax expense, connected with dividing those latter funds.

According to the wife's characterization, excepting the value of the marital residence's furnishings and the value of the parties' automobiles, the court assigned her marital assets with equity totaling $135,690; the husband was assigned equity totaling $202,250. The wife's award was composed of the $113,000 equity in the marital residence, 60% of the husband's *pro forma* account, and her under $100 in personal savings and checking. The husband's award was composed of his $72,000 savings account, 40% of his *pro forma* account, the parties' $24,944 1989 tax refund, his $40,849 Keogh account, his $42,750 partnership account, his $6,000 checking account, and his coin collection.

■ In reviewing the trial court's dissolution order, we initially observe that we find no abuse of discretion in the court's assignments of value to the parties' various assets and debts. Those conclusions were well within the court's discretion, given the conflicting testimony and the need to assess the witnesses' credibility. Similarly, we find no independent abuse of discretion in the court's failure to assign a value to the parties' automobiles and marital furnishings or to its division of those assets. More broadly, however, we find that as a whole, the court's distribution of assets and debts represents an abuse of discretion.

■ One of the items of dispute for assessing the relative equity allocated to each party is the allocation of tax consequences connected with division of the husband's *pro forma* account. In awarding 60% of the account to the wife, the court did not address the allocation of tax consequences on the receipt of the funds. The wife argues that the extent of equity awarded her is even less than it appears, because her *pro forma* award will be diminished by the tax liability associated with the withdrawal of the funds. The husband suggests that he will bear full tax liability for the fund withdrawal and that his equity is correspondingly less than that asserted by the wife.

To consider the preliminary question of allocation of *pro forma* tax liability, we observe that the court's comments regarding the *pro forma* account omitted any tax discussion. Further, the court's particular language provided that the husband "is ordered to pay [the wife] 60% of the [*pro forma* amount] that has been allocated for 1991." The

*pro forma* allocations are not taxed when allocated, but are subject to taxation as ordinary income when withdrawn from the account.

We find that the language of the court's award does not clearly reveal the court's intention regarding allocation of the *pro forma* tax consequences. However, for the sake of reviewing the argument that the court's award was within the court's proper discretion, we construe it in the manner most consistent with that conclusion and find that the husband correctly concludes that the award places the tax burden for the *pro forma* distribution on him, and not on the wife. That conclusion is bolstered by the fact that in contrast to its approach on the *pro forma* division, in dividing the husband's pension benefits, the court specifically ordered each party to bear the tax burden for his respective share of the money.

Thus, for the sake of our further analysis we have rejected the wife's argument that because of the *pro forma* tax issue the equity amount allocated to her should be seen as an even smaller share. We go on, then, to observe that even so, the husband's relative distributive share of the parties' assets is substantially larger than the wife's. Thus, we continue by examining the husband's further argument that his allocation is not as large as it first appears.

▪ In his argument, the husband claims that the approximately $25,000 tax refund he was awarded and that the wife includes in her calculation of his receipts was a "non-existent" asset already applied to the parties' 1990 tax liability. We are not persuaded by his assertion. We observe that the husband may not, in fact, have full freedom in his use of those monies. Nevertheless, with their award he was, at least, empowered to use the full amount to apply to the tax obligation. The mere fact that the husband, thus, could use marital funds to pay a tax obligation demonstrates that the award clearly was a meaningful one to him.

▪ We next address the husband's presentation presumably directed towards the court's award to him of the parties' $72,000 savings account. In making its award, the court remarked that those monies were earmarked for the payment of taxes. The husband recounts that in addition to his 1989 tax overpayment credited to future tax liability, he had made 1990 tax payments of $42,600. Also, he notes his estimates that he would pay an approximate $15,000 with his April 1991 extension and $80,000 estimated taxes in 1991. Despite this recounting, the husband offers no argument why the court's allocation of this account should receive some special interpretation. We find no reason to adjust our evaluation of the equity in this asset in assessing the relative equity amounts received by the parties.

■ Lastly, we address the husband's argument that the court's division was an acknowledgment of the illiquidity of certain assets and of the costs associated with dividing them. Again, we are unpersuaded by the husband's presentation. Any division, for example, of the husband's Keogh and partnership interest, should consider the costs associated with that division. (See Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(11).) Nevertheless, contrary to the husband's suggestion, the existence of such costs is not justification for a property distribution that unjustly favors one of the parties.

■ Under this award, the husband's share of the marital assets exceeded the wife's. Additionally, the husband received nearly all the couple's liquid assets. Furthermore, the husband is the only party with the current ability to earn significant income; his long-term financial outlook is also vastly brighter than the wife's. We find that, considering the length of the marriage and the parties' relevant contributions and economic positions, the division of assets represents an abuse of discretion. See *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 207.

In reaching our conclusion that the property division is inequitable, we further question the court's determination that only tax refunds received in cash would be divided by the parties. We find that the division of a cash refund is not a significantly simpler prospect than is the division of an amount applied to future tax liability. We further find that a refund not received as cash is as clearly a marital asset as is a cash refund. Lastly, we find no justification for the husband to receive the full amount of any refund on sole consideration that he would apply it to future taxes. Although the court's restriction could be appropriate in the context of an otherwise just division, we do not consider it defensible in this case.

■ Based on the foregoing, we reverse the court's property distribution. That decision, of course, is closely connected with any analysis of the wife's second argument on appeal: that the court abused its discretion in ordering her to pay her entire credit card and attorney fee debt. Initially, we find that, contrary to the husband's assertion, the wife has not waived any alleged error in the court's order on attorney fees. The wife's counterpetition, her trial court argument, and her petition for reconsideration, together with her evidence of her attorney fee indebtedness, adequately preserved the issue. Regarding her credit card debt, however, the wife presents no authority in her appellate presentation. (See 134 Ill. 2d R. 341(e)(7).) We find that portion of her argument is waived.

■ Under section 508(a)(1) of the Act, the court may order either party to pay all or part of his own or the other party's attorney fees and costs incurred in the maintenance of an action under the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a)(1).) A party seeking fees must show a financial inability to pay and that the other spouse is financially able; financial inability does not mean destitution, but that payment would strip the petitioner of his means of support and undermine his financial stability. (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 602.) An award of attorney fees rests in a trial court's sound discretion, and we will not disturb the court's decision unless it represents an abuse of discretion. 206 Ill. App. 3d at 602.

Because an attorney fee award is interconnected with the overall allocations in the dissolution (*In re Marriage of Carr* (1991), 221 Ill. App. 3d 609, 612), we cannot offer a final opinion on whether the denial of attorney fees would be an abuse of discretion under a new property allocation. Nevertheless, under the trial court's property division now on review, we find little record support for the court's finding that the wife is able to pay her attorney fees. The wife was awarded virtually no liquid assets. Her income and potential for current income are both meager. Additionally, she was awarded only $750 in monthly maintenance. The record strongly suggests that her repayment of her rather extensive attorney fees would significantly undermine her financial stability. (See *Osborn*, 206 Ill. App. 3d at 602.) On remand, the trial court will reconsider the matter in its full context.

■ The wife's final argument on appeal is that the court reversibly erred in calculating child support. More specifically, the wife argues that in determining child support the court erred in not including the amount allocated to the husband's *pro forma* account as part of his "income" for determining support.

According to the wife's undisputed assertion, the amount credited to the husband's *pro forma* account for 1990 was $37,667. In setting child support, the court observed that it would not consider the *pro forma* amount "since there is no guarantee that [the husband] will draw down the account in future years and, in fact, cannot do so in 1991." On appeal, the wife argues that the husband's *pro forma* receipts are compensation and an amount that should be included in the husband's total income for calculating child support.

Under section 505 of the Act, the court shall determine minimum child support for two children at 25% of the income of the supporting parent. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).) The actual amount of support awarded may vary from that guideline, with consideration

of factors such as the financial resources of the children and the financial resources and needs of each parent. (Ill. Rev. Stat. 1991, ch. 40, pars. 505(a)(2)(a), (a)(2)(b), (a)(2)(e).) "Net income," upon which statutory support is calculated, is subject to specific exclusions for income and social security tax, mandatory retirement contributions required by law or as a condition of employment, union dues, health and hospitalization insurance premiums, prior support obligations, repayment of income-production debts, necessary medical expenditures, and certain expenditures for the benefit of the children and the other parent. Ill. Rev. Stat. 1991, ch. 40, par. 505(3).

In support of the trial court's decision to exclude the *pro forma* monies from its child support calculation, the husband argues primarily that the court's award is sufficient, considering the extent of the children's reasonable needs. He also notes the difficulty of calculating his full income, as adjusted by capital-call and unreimbursed business outlays, the possibility of a capital call, and the related inadvisability of drawing down the *pro forma* capital account.

We find that neither any difficulty in calculating the husband's full income nor the sufficiency of the child support award in relation to the children's reasonable needs is dispositive of this issue. Under section 508, the necessary initial calculation to determine child support is the supporting parent's income. (Ill. Rev. Stat. 1991, ch. 40, par. 505; *In re Marriage of Partney* (1991), 212 Ill. App. 3d 586, 590-91.) Furthermore, we find no case or statutory basis to support exclusion of the husband's full *pro forma* allocation from his "net income" for purposes of calculating child support.

The husband presents no case analysis for why the *pro forma* allocations should not be considered to be "income." Further, while the clear language of section 505 enumerates several exclusions for child support "income" calculations, and while section 505 could be read to exclude from "income" calculation any portion of a "pro forma like" allocation that must remain in an allocation account as a buffer for capital drawdown (see Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(h); Ill. Ann. Stat., ch. 40, par. 505, Supplement to Historical & Practice Notes, at 177 (Smith-Hurd Supp. 1992)), we find no basis in the clear statutory language of the Act (see *Toys "R" Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 568) for the trial court's determination that it should not at all consider the *pro forma* allocation in relation to its child support calculation. By excluding the husband's full *pro forma* allocation from that calculation, the trial court abused its discretion. See *In re Marriage of Dodds* (1991), 222 Ill. App. 3d 99, 102-03.

Based on the foregoing, we reverse the judgment of the circuit court of Du Page County. We remand the cause for the trial court to reconsider a proper award distributing the parties' marital assets and obligations, determining child support, and considering the payment of the wife's attorney fees.

Reversed and remanded.

BOWMAN, J., concurs.

UNVERZAGT, J., dissenting:

The wife asserts that the trial court abused its discretion in the distribution and allocation of marital assets, debts and attorney fees. She asserts that the trial court erred as a matter of law in finding that the *pro forma* account was not income for purposes of determining child support.

The record in this case approaches 1,200 pages, including 25 exhibits received in evidence, many of which are complicated accounting matters. The hearings before the trial court covered a period from February to December 1991.

After a painstaking and meticulous determination of judgment by the able and experienced trial judge, the majority reverses the judgment and sends the whole thing back to the trial court to be redone.

In my view, the majority is committing serious error which will cost the parties dearly in time, effort, aggravation and expense. Little improvement can be expected upon retrial.

The distribution of marital property rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385.) I am of the opinion that the trial court's decision regarding the distribution of assets is a proper exercise of its broad discretion.

Initially, I note that the trial court's judgment appealed from placed no value on the furniture in the marital home. The husband testified it was worth $40,000, and the wife testified it was worth no more than $15,000, and later $8,515. In any event it is no small amount. The trial court provided that if the parties could not agree upon a value the property should be sold at public auction and the proceeds divided 60% to the wife and 40% to the husband. The parties neither agreed to a value nor was a public auction held. The court's judgment is therefore nonfinal in that regard. The wife asks that we award the furniture and furnishings to her. The majority finds no error in the trial court's failure to assign a value to the par-

ties' automobiles and marital furnishings, or a division of those assets. I therefore assume there will be a public auction and the proceeds divided 60-40 according to the court's judgment.

The majority states that broadly speaking "we find that as a whole, the court's distribution of assets and debts represents an abuse of discretion." (239 Ill. App. 3d at 281.) I take issue with this determination. First, the majority discussed the trial court's determination that 60% of the *pro forma* account is to be turned over to the wife. The majority acknowledges that when this happens the account is converted to income and thus taxable to the husband, although received by the wife. That of course is one of the reasons the trial court awarded the property as it did.

The majority next discusses the award of the $72,000 savings account to the husband which the trial court remarked was earmarked for the payment of taxes. The majority quite incomprehensibly states "We find no reason to adjust our evaluation of the equity in this asset in assessing the relative equity amounts received by the parties." (239 Ill. App. 3d at 282.) Hardly convincing and hardly supporting reversal of the trial court award.

Section 503(d) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)) allows the trial court discretion to divide marital property into "just proportions," taking into consideration all of the factors listed as well as any others deemed relevant to the case. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37.) The touchstone of proper apportionment is whether it is equitable in nature, with each case resting on its own facts. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 847.) The division need not be equal to be equitable. (*In re Marriage of Riech* (1991), 208 Ill. App. 3d 301.) The trial court's discretion in these matters will not be disturbed absent clear abuse. Discretion has been abused where no reasonable man could adopt the trial court's position. *Hart,* 194 Ill. App. 3d at 847.

Here, it cannot be said that no reasonable man would adopt the trial court's distribution. The majority should therefore affirm.

The majority also confuses the issues of tax refunds. The trial court clearly provided that the husband would be entitled to any refunds for the periods he filed singularly. The trial court provided for the division of refunds for those refunds for returns where the parties filed jointly. The majority again incomprehensibly states: "Although the court's restriction could be appropriate in the context of an otherwise just division, we do not consider it defensible in this case." 239 Ill. App. 3d at 283.

Finally, the allowance of attorney fees and the proportion to be paid by each party are within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 384.

The majority alleges that "[t]he record strongly suggests that her repayment of her rather extensive attorney fees would significantly undermine her financial stability." (239 Ill. App. 3d at 284.) It should be noted that the wife never complained of these fees and agreed to them. There was no adversarial hearing in this regard. Certainly, when the trial court was awarding the wife 60% of most of all the available assets, the provision that each party pay its own fees was not an abuse of discretion.

The majority's failure to come to grips with the *pro forma* account as it relates to income is another reason to affirm the judgment below.

The trial court awarded the available *pro forma* account like an asset, at 60-40 division. It provided for notice to the wife as to when future *pro forma* amounts would be requested. Thus, the amount could at that point be declared income or it could be available as it was intended by the partnership as a capital account subject to calls. There was no error in the trial court's determination.

The judgment of the circuit court of Du Page County should be affirmed.