*In re* MARRIAGE OF HELENE DE BAT, Petitioner-Appellee, and AL-FRED DE BAT, Respondent-Appellant.

First District (5th Division)   No. 83—580

Opinion filed September 14, 1984.

Francis X. Riley, of Wheaton, for appellant.

Richard S. Reizen, of Chicago (Joyce & Kubasiak, of counsel), for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Respondent Alfred De Bat appeals the portions of a judgment for dissolution of marriage which provided for the property division and the award of unallocated family support. The issues presented on appeal are whether the trial court's division of the parties' marital assets and the award of unallocated family support were proper. We affirm.

Respondent and petitioner Helene De Bat were married April 26, 1969, and had one child, Avril, born August 3, 1975. At trial, petitioner was 42 years of age and respondent was 51. In 1970, the parties purchased as joint tenants a two-apartment building with $16,000 accumulated by respondent prior to the marriage and a mortgage for the balance. Respondent paid the monthly payments of $373.73 and real estate taxes of $1,200 to $1,400 per year. The parties occupied the second-floor apartment as their marital home, and tenants occupied the first floor at a rental of $450 per month.

Respondent received a bachelor's degree and a master's degree in journalism in 1954 and 1955, respectively. At the time of marriage he was employed at an annual salary of approximately $15,000. From 1970 until 1979 he was employed by Playboy Enterprises, Inc., as manager of the international publishing division at an average annual salary of $35,000. In this employment he engaged in extensive travel and was frequently out of the country for periods of several days to two weeks. The average duration of his travel away from home ranged from one week to 10 days, although one trip lasted more than a month. Respondent was unemployed for a year following the elimination of his position at Playboy. In 1980 he began working for Signature Publications at an annual salary of $38,000 and was again required to travel frequently. Respondent testified at trial that he was then unemployed but stipulated before judgment was entered that he was employed at a salary of $30,000 per year. He is a member of the American Society of Photographers and has worked as a professional photographer on a part-time basis while employed as an editor and

journalist. He testified that on occasions he received payments of as much as $400 directly from Signature for photographs taken by him.

Petitioner has completed two years of college but has not received any degree. Prior to marriage, she was employed successively as a secretary, receptionist and as a teacher in the use of communication equipment in a hospital. She continued employment for a year after marriage and terminated full-time employment when she became ill after suffering a miscarriage of twins in January 1971. Petitioner testified that she performed the gardening and lawn care, the interior and exterior maintenance and interior decorating of both apartments of the marital home. She assumed most of the duties related to care of their child, especially during respondent's frequent absences due to work-related travel, and did the cooking, cleaning and laundry in maintaining the family home. Avril started nursery school at three years of age, and petitioner drives her to and from school each day. Petitioner testified that she sought employment by looking through the newspaper advertisements but has been unable to find a job for which she was qualified and which would allow her to continue to care for her daughter as she had been doing. In an attempt to generate some income, she is researching and writing a book on children's activities and hopes to herself promote and distribute the book, although she has had no experience in this field. Petitioner testified that Avril likes the present home and has friends in the neighborhood. Petitioner submitted an affidavit summarizing the average monthly expenses of herself and her daughter at $1,683.75.

The evidence before the court included further testimony and exhibits concerning the various bank accounts, stocks and assets of the parties. The judgment for dissolution of marriage entered February 9, 1983, *inter alia* found that respondent had held an account without the knowledge of petitioner at Lake Shore Bank in the amount of $21,000 which was withdrawn in 1978 and for which there has not been a satisfactory accounting; that the stipulated values of the marital assets were adopted; and that the court has taken into consideration all of the relevant factors as to the disposition of the property, maintenance and child support, "including those prescribed by Statute in Chapter 40, Sections [sic] 503 and 504 and 505 of the Illinois Revised Statutes, and the subparagraphs contained therein." The court thereupon awarded custody of Avril to petitioner with visitation to respondent and ordered the marital property divided.

The judgment fixed the value of the apartment building at $85,000 (after deduction of a mortgage balance of $3,000 to $4,000), and ordered that the building be awarded 75% to petitioner and 25%

to respondent; that the necessity and costs of any major repairs or capital improvements be agreed upon or determined by the court, which costs shall be shared in like proportions; that petitioner is responsible for mortgage, tax and insurance payments; that petitioner have exclusive possession and receive all rentals until Avril reaches 18 years of age or prior thereto if petitioner chooses to sell; that petitioner have the right at any time to purchase respondent's 25% share or to sell the building at existing market value to be agreed upon or otherwise determined by the court.

The judgment further awarded petitioner two bank accounts aggregating $15,485.74, a Toyota automobile of no value, and her nonmarital 400 shares of E.G.&G. valued at $8,000. Respondent was awarded as his property an IRA account of $14,000, three bank accounts of a total of $7,700, and 300 shares of Playboy stock valued at $2,100. In addition to the foregoing, an IRS refund check for $3,850 was divided equally, and the furniture and furnishings were to be divided by agreement of the parties.

The judgment concluded by ordering respondent to pay to petitioner "as and for unallocated family support the sum of $800 per month *** until Avril, the minor child, graduates 8th grade grammar school, at which time said amount shall be re-evaluated by this Court. It is the intent of this Court that said payments of unallocated family support shall be deductible from ALFRED'S income and includable in HELENE'S income"; and further that each party is responsible for his or her own attorney fees.

Respondent appeals.

OPINION

Respondent first challenges the court's distribution of marital property. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act requires that the court shall divide marital property in just proportions considering all relevant factors, including those therein specifically set forth. Ill. Rev. Stat. 1981, ch. 40, par. 503(c).

It is undisputed that an equitable division of property is not necessarily an equal one. (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.) The distribution of marital property rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 458, 426 N.E.2d 1084.) An abuse of discretion occurs only if no reasonable person would take the view adopted by the court. *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 58, 446 N.E.2d 1198.

Respondent contends that the court erred in awarding petitioner the marital residence subject to his right to receive 25% of the proceeds from its eventual sale. He argues that his share in the proceeds may not be realized for 11 years, that he should have a more immediate right to his share of the property, and that the distribution is therefore inequitable. We disagree.

■ One of the "relevant factors" the court must consider in dividing the marital property is "the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children." (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(4).) At the time of trial and when the judgment was entered, the marital residence was subject to monthly mortgage payments of $373. Respondent admitted that even considering the amount received as rent for the first-floor apartment the building operates at a negative cash flow. Moreover, the court heard testimony that the monthly rent on a suitable apartment for petitioner and Avril would be far in excess of the amount of the monthly mortgage payment. The record shows that the court properly considered not only the above factors but also the other relevant factors including petitioner's contribution as a homemaker, her vocational skills and employability and custodial provisions for the minor child. (See Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) We are therefore unable to say that the court abused its discretion regarding the award of the marital home.

■ Respondent also argues that the net amount he will realize upon sale of the property may be zero, or that the award as to the marital residence may even be a liability because he is obligated to pay 25% of the cost of the "maintenance and improvements petitioner chooses to make." Respondent misstates the pertinent provision of the judgment, which provides that he shall pay for 25% of the cost of necessary major repairs and capital improvements. Such expenditures may be undertaken only upon the agreement of the parties as to their necessity and cost or, if they are unable to agree, upon the court's determination of such factors. Respondent is not required to absorb the cost of routine maintenance but only to contribute to the cost of such major repairs and capital improvements as may be agreed or determined to be necessary to preserve or increase the existing value of the property. We do not find it inequitable to require respondent to contribute in proportion to his interest in the property, because such expenditures will protect the value of his interest and, in the case of capital improvements, will be recovered by him upon its sale.

■ Respondent next contends that petitioner's award amounted to $180,000 in usable assets and that only $10,000 of his award is immediately available. He arrives at these figures by construing petitioner's award as providing $109,800 in free rent and rental income for 11 years and $57,600 maintenance in gross ($800 per month for 72 months). He maintains that the division of property was, therefore, inequitable.

We find no merit to this contention. As concluded above, we find no abuse of discretion in the court's determination regarding the marital residence. Although respondent characterizes the amount of unallocated family support awarded to petitioner as maintenance in gross, the court ordered that such payments be made monthly, not as a lump sum award. The total amount, accordingly, is not a sum that is immediately available for petitioner's use. Furthermore, the award was to provide maintenance for petitioner, as well as support for the child. An award of maintenance may be made in such amounts as the court deems just after consideration of all relevant factors, including "the financial resources of the party seeking maintenance, including marital property apportioned to him." (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1).) Our review of the record indicates that the court properly considered all the factors pertinent to the division of property and the award of maintenance and we, therefore, find no abuse of discretion.

■ The second issue raised is whether the court erred in awarding maintenance to petitioner. Section 504 of the IMDMA provides that the court may grant a maintenance award for either spouse if it finds that the spouse seeking maintenance:

"(1) lacks sufficient property, including marital property apportioned to him to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income." (Ill. Rev. Stat. 1981, ch. 40, par. 504(a).)

Maintenance may be awarded in such amounts and for such periods of time as the court deems just after consideration of all relevant factors, including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a

sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1981, ch. 40, par. 504(b).

Respondent first contends that the court erred in awarding maintenance because it failed to consider the skills, age, ability and employability of petitioner and because it failed to consider the time required for petitioner to find appropriate employment. In considering the question of the wife's future employment following dissolution of marriage, this court recently stated:

" 'While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife had foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate.' *In re Marriage of Kitson* (1974), 17 Or. App. 648, 655-56, 523 P.2d 575, 578-79." *In re Marriage of Lukas* (1980), 83 Ill. App. 3d 606, 617, 404 N.E.2d 545.

A review of the record makes it abundantly clear that the trial

court properly considered all the relevant factors in determining the amount and duration of the ordered support payments. Petitioner was 29 when she was married and had been employed as a receptionist, secretary and a teacher in the use of communication systems. She has completed two years of college. At the time of trial she was 42 years old and had not worked on a full-time basis for over 10 years. Petitioner testified to the time constraints she was under due to child-care responsibilities. It is apparent that the court was cognizant of the statutory requirements and of the facts and circumstances of the parties when he ordered maintenance to continue until the minor child has completed the eighth grade, at which time the amount of the award would be re-evaluated. The trial court here did not award permanent maintenance, but, in recognition of petitioner's limited skills and time-consuming child-care responsibilities, awarded unallocated support for a specified period of time during which petitioner can continue to meet the minor child's needs while preparing herself for that time in the future when the amount of such support will be re-evaluated and, possibly, revised.

Respondent also contends that the court erred in its distribution of marital property and in awarding maintenance in that it failed to consider his needs. We agree with respondent that the court must consider the needs of each of the parties in dividing the marital property and in awarding maintenance. (See Ill. Rev. Stat. 1981, pars. 503(c)(7) and 504(b)(6).) The record here shows that consideration was given to all the relevant factors, including the needs of the parties. The court stated, "That's a lot of money this man is paying. They should be able to take care of that. I realize it might not be enough for everybody. There never is enough in these kinds of cases, and that's the only thing I can do." Petitioner filed an affidavit setting forth the amounts needed for monthly expenses for herself and Avril. The amount of the maintenance payment ordered is less than half of the amount stated therein. The record here shows that the court considered the relevant factors including petitioner's custodial status, respondent's proven ability to make money, and the wide disparity in the parties' earning powers.

The award of maintenance resides within the sound discretion of the trial court and will not be disturbed on review unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 658, 427 N.E.2d 285.) On the record here presented, we are unable to say that the award of maintenance was an abuse of discretion or against the manifest weight of the evidence.

For all the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

SULLIVAN and LORENZ*, JJ., concur.

———

*Justice Wilson, who participated at oral arguments, has since died. Justice Lorenz has listened to the tape of the oral arguments and reviewed the briefs and record.