*In re* MARRIAGE OF BRENDA DIANNE HACKER, Petitioner-Appellant and Cross-Appellee, and ROBERT H. HACKER, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—92—0190

Opinion filed December 17, 1992.—Rehearing denied February 2, 1993.

Lori S. Cowdrey and Charles J. Gramlich, both of Gramlich Law Offices, P.C., of Springfield, for appellant.

James Alexander Pappas, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 16, 1990, the circuit court of Sangamon County entered a bifurcated judgment dissolving the marriage of petitioner Brenda Dianne Hacker and respondent Robert H. Hacker, reserving contested issues of child support and property distribution. On December 19, 1991, the circuit court entered the second-half of the bifurcated judgment from which petitioner appeals and respondent cross-appeals. Petitioner contends the court erred in (1) awarding respondent as his nonmarital property his contribution to the marital home; (2) failing to award her a greater share of the marital estate and deferring payment of her share for an allegedly unreasonable period of time; and (3) denying her request that respondent pay a portion or all of her attorney fees. Respondent contends the court erred in (1) dividing his tax-deferred compensation proceeds based on a present cash value, and (2) awarding the parties joint custody of their three minor children.

The joint custody award provided that the physical custody of the three young children would shift between the parents on a weekly basis subject only to special provisions for holiday and summertime visitation. Considering the ages of the children and the financial resources of the parents, we determine this arrangement was error. We also find error in the distribution of the marital estate. We must remand for correction of these errors. At that time, the correction may best be made by making other adjustments to the determination of custody and the other aspects of the December 19, 1991, order. Accordingly, we reverse that order except in regard to petitioner's request for attorney fees and remand for further proceedings.

■ Because the aspect of the joint custody order shifting the children from one parent to another weekly is at the heart of our concern, we consider that question first. Section 602.1(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) sets forth the criteria for an award of joint custody in these words:

"The court may enter an order of joint custody if it determines that joint custody would be in the best interests of the child, taking into account the following:

(1) the ability of the parents to cooperate effectively and consistently with each other towards the best interest of the child;

(2) The residential circumstances of each parent; and

(3) all other factors which may be relevant to the best interest of the child." Ill. Rev. Stat. 1991, ch. 40, par. 602.1(c).

The evidence established that the parties were married on September 17, 1983, and had three children, now ages three, five, and seven. Petitioner is 30 years old, earning an annual gross salary of $28,000 as a registered nurse. Petitioner worked full-time as a registered nurse throughout the marriage. Respondent is 36 years old, earning an annual salary of $36,000 as a systems analyst for the Illinois Department of Revenue. Petitioner testified regarding respondent's alleged bad temper with the children and his excessive methods of discipline. Respondent testified regarding petitioner's long work hours, and alleged indifference toward the needs of the children. Each party presented corroborating witnesses, testifying they believed that party was a fit and good parent.

This court has set aside joint custody orders entered pursuant to section 602.1 of the Act in the cases of *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 547 N.E.2d 590, and *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 509 N.E.2d 707, where the evidence indisputedly showed that the parents had too much animosity to be able to cooperate. Here the evidence is not the same as there. The circuit court could have concluded that both parties were reasonably loving and capable parents who were sufficiently able to cooperate even though each party attempted to prove the other was less capable.

■ Neither party requested joint custody. The court initiated the idea as it is empowered to do by section 602.1(b) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 602.1(b)). The decision to order joint custody was not necessarily erroneous but the decision to have the children live with one parent one week and another the next week was error. No testimony concerning the workability of such a program was presented. We conclude the constant shifting would obviously be detrimental to the minor children, who were seven, five, and three years of age at the time of the decree. Moreover, each home would have to make arrangements and undergo many of the same expenses that would arise if the children were there on a permanent basis. On remand, the court must reconsider the custody arrangement. We are not prohibiting a joint custody order, but the order must give some permanency to the physical custody of the children and not attempt to equalize the time the children spend with each parent.

We now turn to the portions of the decree concerning property. Initially, petitioner maintains the trial court erred in awarding respondent $14,800 from the equity in the marital residence as his non-

marital property. The parties purchased it in July 1983, approximately two months prior to their marriage. The title to the marital residence was placed in joint tenancy in his name and her maiden name. The parties lived in that home throughout the marriage. At the time of the hearing, the estimated market value of the marital residence was $85,500 with a mortgage balance of $39,400. There is no dispute that prior to the parties' marriage, respondent paid the entire down payment for the purchase of the marital residence, totaling approximately $14,800, with a check drawn from an account held solely in his name. Petitioner, however, maintains that all the equity in the marital residence was marital property and respondent was not entitled to be reimbursed for the $14,800 down payment when he failed to trace the down payment to nonmarital funds by clear and convincing evidence, and failed to rebut the presumption that the down payment was a gift to the marital estate.

At the hearing respondent testified that prior to the parties' marriage he sold his nonmarital residence and placed the proceeds of that sale in a bank account held solely in his name. Initially, respondent testified he sold his nonmarital residence for $14,866.50, which he used entirely for the down payment of the parties' marital residence. Respondent claimed petitioner contributed nothing to the down payment of the marital residence. However, the evidence later showed he sold his nonmarital residence for $8,951.82. Respondent then explained that, in addition to the sale proceeds he used his income tax refunds he accumulated prior to the parties' marriage to make the $14,866.50 down payment on the marital home. Respondent's bank statements for the account held solely in his name were introduced into evidence, indicating that on June 27, 1983, he had a balance of $15,832.51, and on July 27, 1983, he had a balance of $2,407.55. In addition, respondent introduced into evidence the check he used to pay the down payment of the marital residence, which was drawn from the account he held prior to the parties' marriage.

Respondent also testified that he did not intend to make his down payment to the marital residence a gift to the marital estate. On cross-examination, respondent testified that he and petitioner bought the marital residence in contemplation of marriage and intended to live there after their marriage. Respondent admitted he never told petitioner he intended to be reimbursed the $14,800 in the event the marriage did not last, and he did not have any reservations about the amount of money he contributed to the marital residence. As part of the property distribution the court "awarded [respondent] as non-mar-

ital property his down payment proceeds contributed to the marital residence of $14,800."

Initially we note:

> "The court, in reviewing a division of property, is not justified in substituting its discretion for that of the trial court. [Citation.] In determining whether the trial court abused its discretion in dividing property subsequent to dissolution proceedings, the question is whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted." *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 268, 511 N.E.2d 156, 165.

Section 503(c)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides as follows:

> "When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution ***." (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(1).)

Section 503(c)(2) of the Act provides for reimbursement for contributions that were transmuted, as follows:

> "When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, *the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which [1] is not retraceable by clear and convincing evidence, or [2] was a gift ***.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).

The Illinois Supreme Court in *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223, 422 N.E.2d 635, 638, stated, regarding property owned by both spouses, that:

> "[A] marital residence owned by both spouses, even if one spouse has furnished all of the consideration for it out of non-marital funds, will be presumed 'in fact' as marital property, absent convincing rebutting evidence."

This court in *In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498, 478 N.E.2d 1192, noted that when title to the marital residence is taken in joint tenancy, a presumption arises that the marital residence

was intended to be a gift to the marital estate, and absent evidence to rebut the presumption, the contributor of nonmarital funds to the marital residence is not entitled to reimbursement.

Respondent maintains that his nonmarital contribution to the marital residence could not have been transmuted to marital property under section 503(c)(1) of the Act, because *a marital estate did not exist when the parties purchased the marital residence two months prior to their marriage*. Consequently, respondent claims he was entitled to reimbursement without having to rebut a presumption of a gift to the marital estate. We disagree. In the case of *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065, the appellate court concluded that real estate, there purchased less than two months prior to the parties' marriage in contemplation of marriage with the intent of using it as the marital residence, was marital property. The *Stallings* court noted as significant that all the equity in the marital residence, other than the down payment, which was furnished from the funds of the wife, resulted from payments and improvements made with marital funds.

█ Here, similar to *Stallings*, the marital residence was purchased in contemplation of marriage, and all the equity in the home, other than the down payment, was accumulated with marital funds. Consequently, even though the marital residence was purchased prior to the marriage, it was part of the marital estate and pursuant to section 503(c)(1) of the Act, the nonmarital funds contributed by respondent to purchase the marital home commingled the properties and transmuted his contribution into marital property. In order for respondent to be entitled to reimbursement he must trace his contribution by clear and convincing evidence and offer evidence sufficient to rebut the presumption of gift.

The evidence at the hearing indicates that only $8,051.82 of the down payment could be traced to the sale proceeds from respondent's nonmarital residence. Respondent's bank statements established he had sufficient funds in his account to pay for the down payment; however, as petitioner points out, there appear to have been some deposits in that account from checks from Memorial Medical Center, where she was employed as a registered nurse. In any event, we conclude the evidence was insufficient to rebut the presumption that respondent's contribution to the marital residence was a gift to the marital estate.

The only evidence offered by respondent to rebut the presumption of gift was his testimony that at the time the parties purchased the marital residence he did not intend to make a gift of his contribution.

Respondent admitted he never told petitioner that he expected to be reimbursed for his contribution in the event of a breakup. The evidence also indicates that the mortgage payments for the house and the real estate taxes were automatically deducted from the parties' joint bank account, and that both parties paid household expenses and home improvements.

The instant case is similar to *Nagel*, where that respondent claimed he overcame the presumption of gift by testifying that the lending institution required both parties' names on the deed, and that he had not intended to make a gift to the marital estate of his contribution to the marital residence by placing the residence in joint tenancy. This court disagreed and affirmed the order of the circuit court finding that respondent failed to negate the presumption of gift by clear and convincing evidence. Accordingly, here respondent failed to offer evidence sufficient to rebut the presumption that the marital residence was a gift to the marital estate, and therefore he was not entitled to be reimbursed for his contribution to the marital residence.

Next, petitioner challenges the court's distribution of the marital estate. In dividing the parties' property, the court awarded various items of personal property to each party as his or her nonmarital property and as his or her share of the marital property. The parties' greatest asset was the marital home, which had approximately $45,600 in equity. As already discussed, the court awarded respondent as nonmarital property his down payment to the marital residence. In addition, the court awarded respondent possession of the marital residence. The court divided $30,800, the remaining equity in the residence, by awarding petitioner $12,500, necessarily leaving respondent approximately $18,300 as his share in the equity. The court ordered that petitioner's share in the equity "plus statutory interest shall be paid if and when the residence is sold but in no event later than 15 years from date of Judgment in this cause."

The parties' second greatest asset was respondent's deferred compensation proceeds which had a present cash value of $26,401.38. The court awarded petitioner $10,000 of those proceeds, "which shall be paid at [respondent's] option either by segregation of funds from the account or within 8 years from date of Judgment in this cause plus statutory interest." In addition, petitioner was awarded her IRA, which had a value of $5,362.68, and respondent was awarded his pension plan, which had a value of $15,935.10.

Section 503(d) of the Act requires the court to divide marital property in "just proportions" considering all relevant factors. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) "The touchstone of apportion-

ment of marital property is whether the distribution is equitable in nature. [Citation.] Mathematical equality is not required; just proportions do not mean equal amounts." (*Wade*, 158 Ill. App. 3d at 268, 511 N.E.2d at 165.) Some of the factors under section 503(d) of the Act relevant in dividing the marital property here include:

"(2) [T]he value of the property set apart to each spouse;

\* \* \*

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

\* \* \*

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; [and]

\* \* \*

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1991, ch. 40, pars. 503(d)(2), (d)(4), (d)(7), (d)(11).

Essentially, petitioner maintains she should have been awarded a greater share of the marital estate, namely one-half of all the equity in the marital home; and that the deferred payment of her share deprived her of any means of providing a home for her children. Because we have already decided the court erred in finding that $14,800 in home equity was respondent's nonmarital property, on remand the court will have to award petitioner a greater share in the equity on the basis that all $45,600 was marital property. A question remains as to whether the court abused its discretion in deferring payment of petitioner's share in the equity up to 15 years, and deferring payment of her share of respondent's deferred compensation up to eight years.

Deferred payment of equity in the marital home until the children reach majority and the home is sold has been upheld when the marital home is awarded to the custodial parent. (*In re Marriage of De Bat* (1984), 127 Ill. App. 3d 463, 468 N.E.2d 1348.) However, in the case of *In re Marriage of Riech* (1991), 208 Ill. App. 3d 301, 566 N.E.2d 826, this court deemed it an abuse of discretion for the trial court to defer partial payment of that petitioner's interest in the marital home until the parties' quadriplegic son no longer resided in the marital home. The *Riech* court distinguished the facts there from the usual situation where the custodial parent of a minor child had possession of the marital home and division of the equity in that home was deferred

until the child reached majority. In addition, the *Riech* court noted that Illinois courts criticize the division of marital property where the time for payment is indefinite or involves a possibility that a party may not receive payment within his lifetime.

■ Here, the court's plan involves a definite payment time, and there is no reasonable possibility that petitioner will not receive payment in her lifetime. Respondent will be solely responsible for paying the mortgage on the home and all the household expenses, likely leaving him in a financial position where he will be unable to pay petitioner a large sum of money. However, he is earning a greater income and has the benefit of living in the marital home building more equity. The court properly recognized the desirability of keeping the children in the marital home; however, even if the weekly alternating custody schedule were upheld, the children would also have needed a decent place to live while in the custody of petitioner.

The court's payment plan leaves petitioner without a home and under the decree left her without a substantial share of the marital estate for many years. In the context of the decree that was entered, this was error. On remand the court must revise the marital division and reconsider the disposition of the house. Unless respondent is to have the major portion of the physical custody of the children, an award whereby he receives the house for an extended period is not likely to be proper unless substantial sums from the marital estate are awarded to petitioner.

■ On cross-appeal, respondent claims the court erred in awarding petitioner $10,000 of his tax-deferred compensation proceeds without considering the tax consequences. In particular, respondent maintains the court erred in considering the present value of the proceeds without considering the actual taxable value of the amount when withdrawn. The evidence indicates that respondent's tax-deferred compensation plan had an account balance of $26,401.38, and that the proceeds could only be withdrawn at retirement, termination or upon a showing of hardship. Respondent testified that he did not plan to terminate his position, and he could not retire until age 56. Furthermore, respondent testified that a dissolution of marriage did not qualify as a hardship. The court ordered the $10,000 to be paid at respondent's option of either segregating the funds from the account, or within eight years from the date of judgment.

Respondent does not claim that petitioner's $10,000 share of the proceeds cannot be segregated into another account until respondent withdraws the proceeds. Moreover, considering respondent's greater income and other property, including his pension plan worth approxi-

mately $15,000, the court did not abuse its discretion in awarding petitioner's share based on a present cash value. However, we are reversing this award so that on remandment the court will have the maximum flexibility in structuring a fair division of marital property which conforms with the situation of the parties.

■ Last, petitioner maintains the court erred in refusing to order respondent to pay part or all of her attorney fees. Petitioner maintains that she incurred $13,928.39 in attorney fees and, because of the disparity in the parties' income, respondent should be liable to pay some or all of those fees. Section 508(a)(3) of the Act provides that the trial court may order either party to pay a reasonable amount for attorney fees necessarily incurred by the other party in any proceeding under the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a)(3).) An award of attorney fees is justified where the spouse seeking the relief demonstrates (1) a financial inability to pay; and (2) the ability of the other spouse to pay. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) Here, although there was evidence that respondent earned more money than petitioner, there was no evidence of petitioner's inability to pay her attorney fees and respondent's ability to pay all or a portion of those fees. In addition, the petitioner testified that prior to the dissolution of the parties' marriage, she withdrew $2,500 in marital funds to pay a portion of her attorney fees. Accordingly, the court did not abuse its discretion in ordering each party to pay his or her own attorney fees. This portion of the decree on appeal will stand because the redivision of property we order will place petitioner in a better financial position than under the instant decree.

Accordingly, we reverse all portions of the December 19, 1991, decree except that in regard to attorney fees, which we affirm. We remand to the circuit court of Sangamon County for a rehearing at which the parties may present additional evidence. The December 19, 1991, decree made no provision for child support. As the question of custody is reopened, the court may reconsider that question.

Affirmed in part, reversed in part and remanded with directions.

STEIGMANN, P.J., and KNECHT, J., concur.